770 A.2d 658

**Montague BLUNDON, III**

v.

**Shirley TAYLOR.**

**No. 33, Sept. Term, 1999.**

Court of Appeals of Maryland.

April 17, 2001.

2

M. Natalie McSherry (Whiteford, Taylor & Preston, L.L.P., on brief), Baltimore, for petitioner.

Barry J. Nace (Paulson & Nace, on brief), Washington, DC, for respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY,* RAKER, WILNER, CATHELL, and HARRELL, JJ.

BELL, Chief Judge.

The issue this case presents involves the validity of "faxing"—transmitting by facsimile—a pleading or paper to the Maryland Health Claims Arbitration Office. The respondent, Shirley Taylor, filed, pursuant to the Health Care Malpractice Claims Act (the "Act"), Maryland Code (1974, 1995 Repl.Vol.), §§ 3–2A–01 through 3–2A–09 of the Courts and Judicial Proceedings Article,[1] a medical malpractice claim against the

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

**1.** Unless otherwise indicated, all future statutory references are to Maryland Code (1974, 1995 Repl.Vol.), §§ 3–2A–01 through 3–2A–09 of the Courts and Judicial Proceedings Article.

**4**

petitioner, Montague Blundon, III, M.D., in the Health Claims Arbitration Office (the "HCAO"). The panel that heard the claim issued an award in favor of the respondent, and the petitioner sought its modification, transmitting the request both by facsimile, which was timely received and docketed by the HCAO, and by regular mail, which arrived in the office one day late. The Circuit Court for Montgomery County having dismissed his challenge to the panel's award, albeit on other grounds,[2] the petitioner noted an appeal to the Court of

---

2. To the trial court, the "crux and central aspect of this case [was] filing without the fee." After his request that the arbitration award be modified was denied and within 10 days of receipt of written notice of the decision, the petitioner sent by regular mail both a Notice of Rejection of Finding of Health Claims Arbitration Panel to the Health Claims Arbitration Office, and an Action to Nullify Finding of Health Claims Arbitration Panel with the Clerk of the Circuit Court for Montgomery County. Although the petitioner did not enclose the $80.00 filing fee, which was not paid until after the respondent had filed a Motion to Strike Petitioner's Action to Nullify and to Dismiss the Notice of Rejection, the clerk accepted the pleading and docketed and time stamped it as received on May 27, 1997, within the prescribed time limit. Noting that, with exceptions not here relevant, the Legislature has decreed that "no case may be docketed and no writ of attachment, fieri facias, or execution on judgment may be issued unless the plaintiff or appellant pays the required fee," Maryland Code (1974, 1995 Repl. Vol., 1997 Cum.Supp.), § 7–201(a) of the Courts and Judicial Proceedings Article, and that "no case may be" is a phrase of like import to "may not," which has "a mandatory negative effect and establish[es] a prohibition," Maryland Code (1954, 1998 Repl.Vol.), Art. 1, § 26, the court explained:

 "[G]iven the prohibition established by the code, given Section 7–201, I have no choice but to conclude it was not properly presented, because it was not accompanied by the filing fee as directed by 7–201."

 The petitioner presents two issues challenging the correctness of this ruling:

 "(3) Where a Defendant has complied with the requirements of Maryland Rule 15–403(c) by a timely filing of a Notice of Rejection of an award, is the Defendant required to file an action or pay a fee to any circuit court to preclude dismissal of his action to reject the award?" and

 "(4) If the Defendant is required to file an action in a circuit court to perfect his action to reject an award in HCAO, is the filing of such an action without a filing fee substantial compliance with the Rules?"

 Because we conclude that the application for modification was untimely, with the result that the notice of rejection was also untimely, we need not, and do not, address these issues.

Special Appeals. In an unreported opinion, that court affirmed the trial court's judgment, but on the basis that the petitioner's transmission of his request to modify the panel award via facsimile did not constitute a timely filing of that request. We granted the petitioner's Petition for Certiorari to review that holding. *See Blundon v. Taylor*, 354 Md. 330, 731 A.2d 439 (1999). We shall affirm.

I.

Judicial review of Health Claims Arbitration awards are controlled by § 3–2A–06. In pertinent part, it provides:

"(a) A party may reject an award or the assessment of costs under an award for any reason. A notice of rejection must be filed with the Director and the arbitration panel and served on the other parties or their counsel within 30 days after the award is served upon the rejecting party, or, if a timely application for modification or correction has been filed within 10 days after a disposition of the application by the panel, whichever is greater.

"(b) (1) At or before the time specified in subsection (a) of this section for filing and serving a notice of rejection, the party rejecting the award shall file an action in court to nullify the award or the assessment of costs under the award and shall file a copy of the action with the Director. Failure to file this action timely in court shall constitute a withdrawal of the notice of rejection. Subject to the provisions of subsection (c) of this section, the procedures applicable to the action including the form and necessary allegations in the initial pleading shall be governed by the Maryland Rules. The Director need not be named a party to any action under this section."

Thus, for judicial review to occur, there must be a rejection of the arbitration award, notice of which is timely filed on the Director of the HCAO, the arbitration panel and the other parties or their counsel and a timely filed court action to nullify the award, a copy of which is also filed with the Director. Notice of rejection, like the action to nullify, is

timely if filed and served within 30 days after service of the award on the party rejecting it or within 10 days after the decision rendered in response to a timely filed application to modify or correct the award.

Section 3–2A–05(h) addresses the procedure for filing applications for modification or correction of an award. It provides, as pertinent, that "[a] party may apply to the arbitration panel to modify or correct an award as to liability, damages, or costs in accordance with § 3–222 of this article." Section 3–222, of the Arbitration and Award Subtitle of the Courts and Judicial Proceedings Article, in turn, provides in pertinent part: "(a) Application.—A party may apply to the arbitrators to modify or correct an award within 20 days after the delivery of the award to the applicant."

A written copy of the panel's award in favor of the respondent was served on the petitioner on April 9, 1997. The petitioner then had 20 days, or until April 29th, to seek modification of that award and, foregoing the right to seek modification, 30 days, or until May 9th, to seek judicial review. On the other hand, if, as the petitioner did in this case, modification was sought, the petition for judicial review could be filed within 10 days after the decision on the application. In this case, the Panel Chair, in an order dated May 14, 1997, and received by the petitioner on May 16, 1997, denied the requested modification. Thus, if his application for modification were to be timely, the petitioner had until May 27, 1997 [3] to reject the award and file an action to nullify.

On April 28th, the petitioner "faxed" to the HCAO his Request For Modification of Arbitration Award. It was received that same day, and was so stamped by the HCAO. The petitioner, on the same day, also mailed the same paper to the HCAO, by regular mail. The mailed copy was received in the Health Claims office on April 30, 1997, one day after the

---

**3.** May 26, 1997 was an official State holiday, the observance of Memorial Day.

deadline for filing the request for modification, a matter that is not in dispute.

## II.

### A.

Inasmuch as the request for modification that was mailed was received untimely, but the copy that was "faxed" was timely received, the question we must address is the propriety of docketing that copy, whether, in other words, its receipt and docketing were valid. Because "[e]xcept as otherwise provided, the Maryland Rules shall apply to all practice and procedure issues arising under [the Health Claims Arbitration Act]," § 3–2A–02 (d), we seek the answer in Maryland Rule 1–322, which provides:

"(a) Generally. The filing of pleadings and other papers with the court as required by these rules shall be made by filing them with the clerk of the court, except that a judge of that court may accept the filing, in which event the judge shall note on the papers the filing date and forthwith transmit them to the office of the clerk. No filing of a pleading or paper may be made by transmitting it directly to the court by electronic transmission, except pursuant to an electronic filing system approved under Rule 16–307.

"(b) Photocopies; Facsimile Copies. A photocopy or facsimile copy of a pleading or paper, once filed with the court, shall be treated as an original for all court purposes. The attorney or party filing the copy shall retain the original from which the filed copy was made for production to the court upon the request of the court or any party."

The inquiry is one involving the interpretation of the rule.

"To interpret rules of procedure, we use the same canons and principles of construction used to interpret statutes." *State ex rel. Lennon v. Strazzella,* 331 Md. 270, 274, 627 A.2d 1055, 1057 (1993). *See Jones v. Hubbard,* 356 Md. 513, 526, 740 A.2d 1004, 1011 (1999) ("the canons of statutory construction ... are also generally applicable in respect to rule construction"); *State v. Bell,* 351 Md. 709, 717, 720 A.2d

311, 315 (1998); *State v. Harrell,* 348 Md. 69, 79, 702 A.2d 723, 728 (1997) ("In construing a rule, we apply principles of interpretation similar to those used to construe a statute."); *In re Victor B.,* 336 Md. 85, 94, 646 A.2d 1012, 1016 (1994) ("We have repeatedly stated that the canons and principles we follow in construing statutes apply equally to an interpretation of our rules."); *State v. Montgomery,* 334 Md. 20, 24, 637 A.2d 1193, 1195 (1994) ("The canons and rules of construction that guide the interpretation of statutes apply equally when interpreting rules of procedure."). *See also Hartless v. State,* 327 Md. 558, 563, 611 A.2d 581, 583 (1992); *State v. Romulus,* 315 Md. 526, 533, 555 A.2d 494, 496 (1989); *O'Donnell v. McGann,* 310 Md. 342, 350, 529 A.2d 372, 376 (1987); *In re Leslie M.,* 305 Md. 477, 481, 505 A.2d 504, 507 (1986); *Pappas v. Pappas,* 287 Md. 455, 465, 413 A.2d 549, 553 (1980).

We stated some of the applicable canons and rules of construction in *Strazzella,* 331 Md. at 274–75, 627 A.2d at 1057:

"In our effort to discern the meaning of a rule, we look first to the words of the rule. When the words are clear and unambiguous, ordinarily we need not go any further. . . . Only when the language of the rule is ambiguous is it necessary that we look elsewhere to ascertain legislative intent. . . . We are also to give effect to the entire rule, neither adding, nor deleting, words in order to give it a meaning not otherwise evident by the words actually used. . . . Finally, we seek to give the rule a reasonable interpretation, not one that is illogical or incompatible with common sense. . . ."

(Citations omitted). *See also Mayor and City Council of Baltimore v. Chase,* 360 Md. 121, 128, 756 A.2d 987, 991 (2000); *Chesapeake and Potomac Tel. Co. of Maryland v. Director of Finance for Mayor and City Council of Baltimore,* 343 Md. 567, 578–79, 683 A.2d 512, 517–18 (1996).

## B.

Applying these rules, the petitioner reaches a different interpretation of Rule 1–322 than does the Court of Special

Appeals. According to the petitioner, giving "meaning to all relevant provisions [of the rule] results in a finding that, though the mere transmission by facsimile is not filing, where a paper received by HCAO through facsimile is docketed, it should thereafter be treated as an original document properly filed." He reasons:

> "The plain words of Rule 1–322(a) provide only that the 'filing' may not be made by 'transmitting it directly to the court by electronic transmission.' The ordinary meaning of such a provision would lead to the result that the transmission itself is not filing and that the risk of transmission remains with the sender. Thus, unlike service by mail, which Rule 1–321 provides is complete upon mailing, filing is not completed until the clerk of the court or a judge receives the document. If a facsimile transmission suffers some technical fatality; the clerk does not have a facsimile machine; the machine is out of paper; or even if the clerk simply does not pick up the document and docket it, filing is not accomplished. However, the words of the same Rule go on to provide for the filing and docketing of facsimile copies as originals, which leads to the conclusion that, though the transmission itself is not 'filing,' once received and docketed, such papers are to be treated as originals 'for all court purposes.' Rule 1–322(b)."

The petitioner also finds significance in the exception—for "an electronic filing system approved under Rule 16–307"—to the direct electronic transmission prohibition in section (a) of the rule. Noting the factors that the rule requires to be considered in determining whether the Court of Appeals should approve a plan submitted pursuant to Rule 16–307,[4] the

---

4. Rule 16–307.b provides:

> "b. Submission of Plan. A County Administrative Judge may submit to the State Court Administrator a detailed plan for a pilot project for the electronic filing of pleadings and papers. After consulting with the County Administrative Judge, the Clerk of the Circuit Court, the vendor identified in the plan, and such other judges, court clerks, members of the bar, vendors of electronic filing systems, and other interested persons as the State Court Administrator shall choose, the

failure of Rule 16–307 to refer to facsimile transmissions, which always will have a paper component, and the fact that Rule 1–322(b), by its terms, anticipates "the appropriate use of facsimile technology in the transmission of pleadings," he submits that, as used in Rule 1–322(a), "electronic transmission" refers to "direct electronic transmission, from computer to computer, without paper pleadings." The petitioner contends that "[t]he only way to give a reasonable meaning to all of Rule 1–322 and to Rule 16–307 is to read Rule 1–322(a) as meaning, with respect to facsimiles, that the mere *transmission* by facsimile is not proper filing, but where a facsimile copy of a pleading is received and docketed by the clerk, the pleading has been properly filed pursuant to Rule 1–322(b)."

## C.

The Court of Special Appeals reached the opposite construction. Relying on the definition of "facsimile" in the Webster's II, New Riverside University Dictionary (1994)[5] and the treatment accorded Rule 1–322 in the treatise by Paul V. Niemeyer & Linda M. Shuett, entitled *Maryland Rules Com-*

---

> State Court Administrator shall review the plan, considering among other things: (1) whether the proposed electronic filing system will be compatible with (A) the data processing and operational systems used or anticipated for use by the Administrative Office of the Courts and by the Circuit Court, and (B) electronic filing systems that may be installed by other circuit courts; (2) whether the installation and use of the proposed system will create any undue financial or operational burdens on the court; (3) whether the proposed system is reasonably available for use by litigants and attorneys at a reasonable cost or whether an efficient and compatible system of manual filing will be maintained; (4) whether the proposed system will be effective, not likely to break down, and secure; (5) whether the proposed system makes appropriate provision for the protection of privacy; and (6) whether the court can discard or replace the system during or at the conclusion of a trial period without undue financial or operational burden. The State Court Administrator shall make a recommendation to the Court of Appeals with respect to the plan."

5. "1. An exact copy, as of a document.
 2.a. An *electronic method of transmitting images or printed matter.*
 b. An image transmitted electronically."

*mentary* (2d ed.1992),[6] it rejected the petitioner's argument and declined to construe the words "electronic transmission" as limited to the transmission of a document by computer. The court concluded:

> "To be sure, a transmission by facsimile is one kind of electronic transmission. But if the Court of Appeals meant only to prohibit electronic filings by computer, it surely would have said so. Moreover, contrary to appellant's argument, HCAO's placing of a date stamp on the facsimile did not transform it into a valid filing under the rules."

### D.

■ We agree with the Court of Special Appeals. In fact, we believe that Rule 1–322 is so clear and unambiguous in this regard that it does not require construction. Section (a) requires that, to be filed, pleadings and papers must be actually delivered, either in person or by mail, to the clerk or a judge of the court in which they are sought to be filed. That this is so is made clear by the provision that the filing of pleadings or papers is accomplished by filing them with the clerk or a judge of the court and the prohibition, excepting only electronic filing systems pursuant to Rule 16–307, against directly transmitting such pleadings and papers by electronic transmission.

■ The petitioner's interpretation of the rule requires either that we read out of the rule the prohibition against filing by direct electronic transmission or that a second exception be engrafted onto that prohibition, one for those transmis-

---

6. The intermediate appellate court pointed out that the authors conclude that "[t]he filing by electronic transmission, such as by transmitting a copy to a court facsimile machine, is prohibited," Paul V. Niemeyer & Linda M. Shuett, *Maryland Rules Commentary* (2d ed.1992) at 40, explaining:

> "A pleading or paper is filed by *actual delivery* to the clerk. This may be accomplished in person or by mail. Although many courts now have facsimile machines, pleadings and papers may *not* be filed by direct electronic transmission to them."

*Id.* (Emphasis in original).

sions, which, though electronic and direct, require a paper component. As we have stated, we are required to read the rule so as to give effect and meaning to all of it, thus avoiding an interpretation that renders any part of the rule nugatory or meaningless. Moreover, we are not permitted in the guise of interpreting a rule to add words so as to give it a meaning not otherwise intended.

Nor is there any inconsistency between the provisions of sections (a) and (b) of the rule. Section (a) deals with how pleadings and papers are filed. Section (b), on the other hand, addresses the treatment to be accorded certain papers once they are filed with the court. Thus, while a facsimile copy of a pleading or paper may not be filed under 1–322(a) directly with the clerk, i.e., "faxed" directly to the court, once it has been filed, by being actually delivered to the clerk, it is, under section (b), treated as an original for all court purposes. So read, the rule is construed so that all parts of the rule have meaning.

## E.

The history of the adoption of the provisions at issue as amendments to Rule 1–322 by this Court confirms this interpretation. *See Mayor and City Council of Baltimore v. Chase,* 360 Md. at 131, 756 A.2d at 993. The Standing Committee on Rules of Practice and Procedure (the "Rules Committee") first considered the issue of filing pleadings by facsimile transmission in January 1989. At its January 13/14, 1989 meeting, the Committee considered correspondence from an attorney seeking to have District Court postponements permitted by "fax." After a general discussion in which it was recognized that the facsimile technology would become more prevalent and that a position would have to taken at some time, it was decided not to endorse "fax" pleading in the District Court or otherwise. Appendix II to the minutes contained an extensive memorandum, with exhibits, from Elizabeth Conklyn, Esq., to the Rules Reporter, concerning "The Use of FAX in filing court documents." The Committee invited the Litigation Section of the Maryland State Bar

Association to address some of the issues raised by the memorandum, including the signature requirement.

The Committee considered the issue again in March of 1990. Among the issues discussed during that meeting were whether a rule was necessary and problems raised by "faxing pleadings, such as the quality of the paper used by fax machines, the amount of time required to 'fax' documents and its effect on the work of the clerks' offices." Appendix II to the minutes consisted of, in addition to a memorandum from the Reporter, updating the Committee and attaching the local Rule of the Maryland Federal District Court, which prohibits pleading by "fax", a number of news and legal journal articles on the subject as well as several articles, *i.e.*, *New York's New Fax Law: An Invitation to Litigation*, 53 Albany Law Review 143 (1988), and George F. Carpinello, *A Cautious Approach to Service by Fax*, 53 Albany Law Review 153 (1988), outlining the pitfalls of allowing the direct facsimile filing of pleadings.

Facsimile pleadings once again were on the agenda of the Rule's Committee's May 18/19, 1990 meeting, this time as an information item. Among the meeting materials was a memorandum concerning the acceptance of facsimile pleadings, from Julia M. Freit, Esq., counsel to the circuit court clerks, which provoked discussion and concern. Responding to inquiries from some of the Clerk's offices with fax machines with respect to whether "counsel may transmit a pleading or paper directly to the Court's or Clerk's fax machine for filing," the memorandum concluded that the Clerks "should request an administrative order from your Court on point" because,

"[a]bsent such an order, you do not have authority to refuse to accept for filing a facsimile copy of a pleading or paper brought into your office for filing. At the same time, there is no authority for attorneys to use the Court's or the Clerk's fax machine for the purpose of filing papers."

Memorandum from Julia M. Freit to All Circuit Court Clerks, April 16, 1990, appendix I, Rules Committee Minutes, May 18/19, 1990. Concern was expressed about the advice to seek administrative orders due to its tendency to create a kind of local

rule, under which some courts would accept facsimile pleadings and others would not. Another concern was the memorandum's suggestion that facsimile pleadings are permitted in the absence of an order to the contrary, causing sentiment in the Rules Committee to make an affirmative statement on the subject. A subcommittee was appointed to which the matter was referred for presentation at the June meeting.

At its June 16/17, 1990 meeting, the Rules Committee proposed to amend Rule 1–322 to address three issues: whether pleadings can be transmitted directly by facsimile to the courthouse for filing; whether the clerk may accept for filing a facsimile copy of a pleading that is delivered to the courthouse; and whether the facsimile copy must contain an original signature. The minutes of that meeting reflect the amendments it adopted:

"No pleading or paper may be transmitted directly to the court by electronic transmission. A photocopy or facsimile copy of a pleading or paper, once filed with the court, shall be treated as an original for all court purposes. The attorney or party filing the copy shall retain the original document for production to the court upon the request of the court or any party." [7]

Apparently as a result of review by the Style Sub–Committee of the Rules Committee, by the time the Rule was submitted to the Court of Appeals on October 31, 1990, as a part of the Rules Committee's One Hundred Thirteenth Report, it had been changed substantially, although not substantively and was in the form in which it was ultimately adopted. Rather than a single section, the Rule was divided into two sections, with the prohibition for the direct electronic transmission of pleadings and papers being placed in section (a) and the

---

7. The Rules Committee's discussion of the prohibition of direct electronic transmission makes clear that it was aware of the situation "where the pleading is faxed to a courier near the courthouse who then delivers the faxed copy." Its later discussion of the treatment of photocopies and facsimiles suggest that it was at least in part the purpose of that section to address that issue. *See* Rules Committee, Minutes of June 15/16 Meeting (1990).

provision as to how to treat photocopies and facsimile copies being placed in a separate section (b). The Reporter's Note to the Rule stated, with respect to the first question the rule addressed, whether a pleading or paper may be transmitted directly to the court's or clerk's fax machine:

"As to the first question, the Committee's view is that filing directly by fax or other electronic transmission should not be permitted. This is also the view of the Administrative Judges of the District Court. To articulate this policy a new second sentence is proposed for Rule 1–322. The language is the same as that used in Rule 102 d 1 of the local rules for the United States District Court, except that the words "Unless otherwise ordered by the court," are omitted. As a practical matter, this is the only approach that makes sense now—the individual circuit courts do not have facsimile machines and the District Court clerks' offices would be overwhelmed by the volume of transmissions if the rule were otherwise."

The second and third questions, whether the clerk may accept a facsimile copy of a pleading or paper that is personally delivered or mailed to the clerk's office and whether a facsimile copy must bear an original signature, were also addressed by the Reporter's Note:

"As to the second and third questions, the Committee is aware that lawyers are using facsimile or other electronic technology to save time, as in the following scenario, Attorney A, in Baltimore City, has to file a pleading by 4:30 p.m. in La Plata. The attorney 'faxes' or otherwise electronically transmits the pleading to Attorney B in La Plata, who walks it over to the courthouse for timely filing. Necessarily, if the original paper in Baltimore City is signed by Attorney A, the facsimile copy will not bear an original signature. Furthermore, the facsimile may be on a type of paper less durable than ordinary bond or 'xerox' paper.

"The Committee considered but rejected the notion that any paper filed must bear an original signature. Case law suggests a photocopied signature would suffice to meet the requirement of Rule 1–311 that every pleading or paper be

'signed.' *See Cherry v. Brothers,* 306 Md. 84, 507 A.2d 613 (1986) and *State v. Romulus,* 315 Md. 526, 555 A.2d 494 [(1989)]. There is no reason to treat a signature copied by facsimile transmission differently from a photocopied signature."

On March 22, 1991, the Court of Appeals adopted the amendments to Rule 1–322, with minor changes, not here relevant,[8] effective July 1, 1991. As adopted, the rule provided;

"(a) Generally. The filing of pleadings and other papers with the court as required by these rules shall be made by filing them with the clerk of the court, except that a judge of that court may accept the filing, in which event the judge shall note on the papers the filing date and forthwith transmit them to the office of the clerk. No filing of a pleading or paper may be made by transmitting it directly to the court by electronic transmission.

"(b) Photocopies; Facsimile Copies. A photocopy or facsimile copy of a pleading or paper, once filed with the court, shall be treated as an original for all court purposes. The attorney or party filing the copy shall retain the original from which the filed copy was made for production to the court upon the request of the court or any party."

The Rule, at that time, did not contain an exception for an electronic filing system. The Rule was amended by the Court on June 5, 1995, effective July 1, 1995 to add the proviso, "except pursuant to an electronic filing system approved under Rule 1217A." By amendment, adopted June 5, 1996, effective January 1, 1997, the Rule was further amended to substitute "Rule 16–307" for "Rule 1217A."

 We conclude that Maryland Rule 1–322 does not permit the filing of pleadings or papers via facsimile by direct electronic transmission. It follows, therefore, that the "faxed" copy of the petitioner's request to modify the panel award may

---

**8.** The Court amended section (b) of the rule by adding to the last sentence, the phrase, "from which the filed copy was made."

not be considered in determining whether his request was filed timely. And, because it is undisputed that the mailed copy of the request was not received until April 30, 1997, one day after the deadline set by § 3–222 for filing the application to modify or correct the award, it also follows that the petitioner's application to modify or correct the award came too late.

## III.

The petitioner maintains, relying on *Ott v. Kaiser–Georgetown Cmty. Health Plan, Inc.*, 309 Md. 641, 651, 526 A.2d 46, 51 (1987), that he substantially complied with, if not the mandate, the spirit of the Rules, their purpose being gratified. Contending that the timeliness of the filing of his application for modification has to be judged in light of what actually happened, that the HCAO accepted and docketed it, he submits that "[i]f there had been notice by HCAO to [him] at the time, that it would not docket a facsimile copy, [he] could have hand delivered an original and perfected the filing in a timely fashion." Focusing on the method that his application to modify was transmitted, he states, misdirects and clouds the issue and overlooks the fact that the respondent was not prejudiced, having received timely notice of the application. As the petitioner sees it, regardless of how the pleading was transmitted, it was received and docketed by the clerk of the HCAO prior to the statutory deadline and should have been treated as "filed with the court [and] as an original for all court purposes." Rule 1–322(b).[9]

---

**9.** Simply because the clerk of the Health Claims Arbitration Office stamps and accepts a facsimile copy of a pleading, or creates a docket entry, that action, alone, does not transform a defective filing into a satisfactory one. As we said in *Corey v. Carback*, 201 Md. 389, 402, 94 A.2d 629, 636 (1953), the clerk of the court "has no discretion or initiative [whether to file a case] and no right to make a judicial determination whether or not to make such an entry." Moreover, the clerk "is required . . . to file 'all papers delivered to him to be filed' but he is not concerned with the merit of the papers nor with their effect and interpretation." *Id.*

To be sure, we have held that "substantial compliance with the Rules is sufficient if the purpose of the Rules is gratified." *Ott,* 309 Md. at 651, 526 A.2d at 51 (1987). *See Curry v. Hillcrest Clinic, Inc.,* 337 Md. 412, 422, 653 A.2d 934, 939 (1995). But we have also held that the "doctrine of substantial compliance has no application to an outright failure to comply." *Simpson v. Moore,* 323 Md. 215, 228, 592 A.2d 1090, 1096 (1991). *See also Tranen v. Aziz,* 304 Md. 605, 614, 500 A.2d 636, 640 (1985).

In none of the cases in which this Court has determined that there has been substantial compliance has there been a complete failure to comply either with the applicable statute or rule. In *Curry,* the plaintiff arguably filed her notice of rejection of the arbitration award entered against her prematurely, before the award was officially served on her. The defendant argued that, because the notice of rejection was required by § 3–2A–06(a) to be filed "within 30 days after the

---

More recently, the Court of Special Appeals in *Director of Finance v. Harris,* 90 Md.App. 506, 602 A.2d 191 (1992) (quoting *McCray v. Maryland,* 456 F.2d 1, 4 (4th Cir.1972)), made the same point, opining:
"The only authority that a clerk has to refuse to accept and file a paper presented for filing is that contained in Md. Rule 1–323. As we noted, that Rule directs the clerk not to accept a paper requiring service 'unless it is accompanied by . . . a signed certificate showing the date and manner of service.'
 * * * *
"In regard to receiving and filing paper, as in the making of docket entries, a clerk acts only as a ministerial officer of the court. The law requires the clerk when requested to do so, to record any paper filed with this office and required by law to be recorded.
"Thus, as stated in, *McCray* . . . '[c]lerical duties are generally classified as ministerial . . . and the act of filing papers with the court is as ministerial and inflexibly mandatory, as any of the clerk's responsibilities.'
"Except as otherwise expressly provided by law, therefore, the clerk has no discretion in the matter and no right to make a judicial determination of whether the paper complies with the Rules or ought to be filed. If the paper has not been presented timely or it suffers from some other deficiency, it is subject to being stricken by the court. . . ."
*Id.* at 511–13, 602 A.2d at 193–94 (some internal citations omitted). *See Harris v. State,* 331 Md. 137, 160 n. 14, 626 A.2d 946, 957 n. 14 (1993).

award is served," a notice filed before the thirty day period commences is void "so that, although it remains noted on the docket of HCAO, it has no efficacy that continues forward in time into the thirty day period." *Curry,* 337 Md. at 422, 653 A.2d at 939. Conceding that the argued for result was once required by the Maryland Rules, we rejected that argument, explaining:

"A change in that former result was effected under Title 8 of the Maryland Rules, "Appellate Review in the Court of Appeals and Court of Special Appeals," adopted effective July 1, 1988. Now, under certain circumstances, a prematurely noted appeal to the Court of Special Appeals is not to be dismissed. Rule 8–602(d) provides:

'A notice of appeal from a ruling, decision, or order that would be appealable upon its entry on the docket, filed after the announcement of the ruling, decision, or order by the trial court but before entry of the ruling, decision, or order on the docket, shall be treated as filed on the same day as, but after, the entry on the docket.'

"We have previously noted the legislative directive in § 3–2A–02 (d) under which 'the Maryland Rules of Procedure shall apply to all practice and procedure issues arising under' the Act, except as otherwise provided. It is consistent with that legislative directive to interpret filing 'within 30 days after the award is served' in § 3–2A–06 (a) to include a notice of rejection filed before service of the award on the rejecting party, if the notice of rejection is filed, as here, after the decision has been announced and if that notice of rejection remains uncountermanded on the docket at the time the award is formally served."

*Curry,* 337 Md. at 423, 653 A.2d at 939–40.

The failure of compliance in *Ott* consisted of an incomplete filing of the action to nullify. Specifically, as described by this Court:

"On 15 October 1985 an arbitration panel rendered a decision in favor of the two remaining defendants, Dr. Levitt and Kaiser. The Otts filed a timely notice of rejection of

the arbitration award with the Health Claims Arbitration Board, pursuant to § 3–2A–06(a).... Then, on 29 November 1985, they filed an "Action to Nullify Award" in the Circuit Court for Montgomery County, naming both Dr. Levitt and Kaiser as defendants. This was followed by a complaint in the same court, filed 30 December 1985, naming Dr. Levitt as the sole defendant. On the same day the Otts filed a pleading encaptioned "Line" and reading:

'Mr. Clerk:

'Plaintiffs herewith file a Complaint pursuant to Maryland Rule BY4 against defendant Robert H. Levitt, M.D. only. There is federal court jurisdiction over defendant Kaiser–Georgetown Community Health Plan, Inc., and plaintiffs have chosen to invoke federal court jurisdiction for the adjudication of their claim against Kaiser–Georgetown Community Health Plan, Inc.' "

"Also on 30 December 1985 the Otts filed a complaint against Kaiser in the U.S. District Court for the District of Columbia."

*Ott,* 309 Md. at 644, 526 A.2d at 48. Explaining our refusal to dismiss the plaintiffs' action, we said:

"The Otts filed a timely notice of rejection. They timely filed in the Circuit Court for Montgomery County a document entitled 'Action to Nullify Award.' As we have already explained, there is no reason why such a document, when filed by claimants-plaintiffs, may not include both the notice of action to nullify and the complaint required by the BY Rules.... That is, the Act's requirement that judicial proceedings be commenced by filing an action to nullify, § 3–2A–06(b), may be met, in circumstances like these, by a single document, if it complies with the time, information, and service requirements of Rules BY2 and BY4. The 'Action to Nullify Award' filed by the Otts did comply with the provisions of Rule BY2. It did not contain sufficient factual allegations to constitute a viable complaint under Rule BY4. But, as we have seen, the Otts did timely file a

complaint, with seemingly sufficient allegations, in the U.S. District Court for the District of Columbia.

"All of these papers were served on Kaiser. Like the health care providers in Cherry and in Osheroff, Kaiser could not have been misled about the Otts's rejection of the award or their intent to pursue a malpractice action against it. All this information was conveyed in timely fashion and adequate detail; the only uncertainty was in which court Kaiser might have to defend. In short, the requirements of the Act and the essential requirements of the Rules were met; the Otts touched all the fundamental bases."

*Ott*, 309 Md. at 651–52, 526 A.2d at 51–52.

This is to be contrasted with the deviation in *Tranen*. There, after receiving official notice of the award of the Health Claims Arbitration Panel adverse to them, the plaintiffs filed a Declaration and Election of Jury Trial in the proper Circuit Court, alleging, in the declaration, the same acts of negligence as had been alleged in the arbitration proceeding, but failing to mention the prior arbitration of the claim. *See id.,* 304 Md. at 608–09, 500 A.2d at 637. A copy of the declaration was not sent to the Director of the HCAO until more than 30 days after receiving the award. *Id.* at 609, 500 A.2d at 638. Affirming the dismissal of the plaintiffs' action, this Court opined: "compliance with the procedures of § 3–2A–06 is a condition precedent to the maintenance of a court action. Here, appellants failed to comply with § 3–2A–06 and the BY rules, and the circuit court was correct in dismissing the action." *Id.* at 614, 500 A.2d at 640. We explained:

"Here, not only did the appellants fail to notify the Director that they rejected the award, but they neglected to file an action to nullify the award as provided by the BY rules. An action to nullify an arbitration award is a two step process. First, a notice of the action must be filed with the clerk of the court within 30 days after the award is served on the rejecting party. Rule BY2. The notice must identify the award and indicate that it is being rejected by the party filing the notice. Not only is it filed in court but a copy is filed on the Director. The second step, under Rule BY4, is

the filing of a declaration setting forth the allegations to be proved entitling the aggrieved party to relief. In order to perfect his standing in court so as to be entitled to judicial resolution of the claim, the aggrieved party must follow both steps within the prescribed time period.

"Appellants complied with the second requirement but not the first. Although appellants filed their declaration only eleven days after they received notice of the arbitral award, the circuit court was not apprised of the award itself or of the fact that appellants were rejecting an award. Appellants thus did not file an action to nullify required by the Act; they merely filed in court a new action, independent of the former arbitration proceeding. This circumvention of the Act's procedures is inexcusable, especially in light of the Act's prescription that a court action may not be brought 'except in accordance with this subtitle.' § 3–2A–02(a)."

*Id.* at 613–14, 500 A.2d at 640. *See Robinson v. Pleet,* 76 Md.App. 173, 180, 544 A.2d 1, 4 (1988), *cert denied,* 313 Md. 689, 548 A.2d 128 (1988), *superceded by statute on other grounds as stated in, Roth v. Dimensions Health Corp.,* 332 Md. 627, 632, 632 A.2d 1170, 1170, where the intermediate appellate court well made the point that:

"The law is replete with procedural hurdles over which a plaintiff must jump before his claim can be heard in court. If the plaintiff through his own fault misses one of those hurdles, he will not be heard to complain of his inability to maintain his cause of action."

*See also Simpson v. Moore,* 323 Md. at 228–29, 592 A.2d at 1096, in which this Court, noting that "[t]he doctrine of substantial compliance has no application to an outright failure to comply, and compliance in this case was a condition precedent to the maintenance of a claim against the State," held specifically that failure to comply with the 180 day requirement of the Maryland Tort Claims Act, even when it does not result in prejudice, bars an action against the State.

It is not disputed that § 3–222(a) allows 20 days after the delivery of an arbitration award for the filing of a motion

to modify that award and that § 3–2A–05 (h) requires that such applications in health claims arbitration proceedings be filed in accordance with that provision. Thus, if he wanted to seek modification or correction of the award, the petitioner was required to file his application to do so within that 20 day period, or, in this case, by April 29, 1997. Maryland Rule 1–322(a), as we have seen, requires that pleadings and papers be filed with the clerk or the court, but clarifies that filing may not be accomplished by their direct transmission to the court by electronic transmission. By "faxing" the application for modification to the clerk, the petitioner transmitted it directly to the court by electronic means and, thus, failed to comply with both the statutes and the rule.

To be sure, the petitioner on the day that he faxed the application, sent a copy to the court by regular mail. Unfortunately for the petitioner, however, that copy was received one day late and, therefore, cannot be the basis for a determination that his filing was timely. Moreover, it may be true that the respondent was aware of the petitioner's intention to seek modification of the award and, indeed, knew that the application was received in the clerk's office, albeit improperly so, and, as a result, was not prejudiced by the late delivery of the application. That, however, does not excuse the petitioner's failure to comply with the rule. To hold otherwise would be to render the rule meaningless and, in a broader sense, make substantial compliance the rule, rather than the exception for the exceptional case.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.