729 P.2d 338

**Larry McGRADY, Plaintiff/Appellant,**

v.

**E. Metz WRIGHT, Jr., M.D., Defendant/Appellee.**

**No. 2 CA–CIV 5646.**

Court of Appeals of Arizona, Division 2, Department A.

Oct. 16, 1986.

Robert Q. Hoyt, P.C. by Gerald T. Barton, Tucson, for plaintiff/appellant.

Chandler, Tullar, Udall & Redhair by D.B. Udall, Tucson, for defendant/appellee.

## OPINION

HATHAWAY, Chief Judge.

In this medical malpractice action, the trial court granted a directed verdict in favor of appellee on the issue of informed consent. Appellant contests that ruling.

Appellant was a sheetmetal worker. In February 1977, he had an on-the-job accident falling from a ladder. At the time the accident was reported, he first noticed a mass in the area of his left clavicle. A biopsy was performed on the mass and the specimen was found to be a "fibromatosis," a nonmalignant tumor. In the summer of 1978, appellant was referred to appellee, a thoracic surgeon, for evaluation of the mass. Before visiting appellee, appellant had spoken to another doctor, a neurologist, who explained to appellant the anatomy of the left clavicle and the importance of the brachial plexus, a nerve center which controls muscle function in the extremity. Appellant was cautioned that if the brachial plexus was cut, he would lose the use of his arm. Appellee did not remove the mass at that visit in September 1978.

In June 1979, appellant discovered a small mass located under his left armpit and returned to appellee. Appellant testified that after examining him, appellee stated, "You waited too long to cut that out, and it's busted out down below, and it's probably malignant and you'll have to take chemotherapy." He further testified

that appellee then told him, "If you don't get it out, it's going to kill you."

Appellant alleges that he specifically told the doctor to stay away from the brachial plexus but that the doctor responded that "if it means saving your life, I'll take it all out." Therefore, appellant testified, he believed that surgery was necessary to save his life and that he had no other alternative. Appellant also alleges that appellee did not discuss with him either the potentially harmful consequences of the surgery to the brachial plexus or the consequences of not having the operation.

On June 22, 1979, the operation was performed. No biopsy of the mass was taken, but a resection of the mass was performed severing the brachial plexus. Postoperative pathological studies confirmed the earlier finding of the preoperative biopsy of fibromatosis, a nonmalignant tumor. Appellant testified that since the operation, his arm has been nonfunctional and he is totally disabled and therefore unable to work. In appellant's complaint he alleged both that the surgery was negligently performed and that the physician had failed to obtain informed consent before proceeding with the operation.

At trial, Dr. Peter Gaal, a thoracic surgeon, testified as an expert on appellant's behalf. Dr. Gaal testified that a surgeon has a duty not to proceed with an operation likely to cause a major disfunction without informing the patient as to alternative forms of care and allowing the patient to make the decision. Gaal also testified that appellee could not have obtained appellant's informed consent to surgery without knowing the nature of appellant's problems. Since a necessary biopsy was not performed, appellee did not meet the standard of care. Appellant testified that if he had been advised of the consequences of surgery and the available alternatives, he would have resorted to those alternatives before proceeding with surgery.

At the close of appellant's case, appellee moved for directed verdict on the issue of informed consent, arguing that appellant had not presented evidence to establish the standard of care or proximate cause regarding informed consent. Appellant argued that Dr. Gaal's trial testimony had provided the requisite evidence. At that point, since it was one day after Dr. Gaal's testimony, appellant's attorney did not have specific portions of the transcript to show the court. The next morning the court granted appellee's motion for directed verdict and instructed the jury as follows:

Ladies and gentlemen, at the start of the trial, you were told that one of the issues that you would have to decide was whether or not there was informed consent for the operation.

You're instructed that this is no longer an issue in the case, and neither side will be asking any further questions on this issue. So you're just to disregard that issue from this point on.

The jury was obviously confused on the informed consent issue and sent a note to the judge asking him for clarification. The judge responded with a note to the jury which stated:

Informed consent is *not* an issue in the case. Please go on to the issue of negligence as set forth in the instructions.

The jury returned a verdict in favor of appellee on the surgical malpractice issue. Appellant moved to vacate the judgment and for a new trial. That motion was denied and this appeal followed.

Appellant contends on appeal: (1) that the trial court erred in directing a verdict for appellee on the issue of informed consent; (2) if the directed verdict on the issue of informed consent is reversed, a new trial must be held on all issues, since the issues of informed consent and surgical malpractice are intertwined at trial by common evidence, common witnesses and common testimony; (3) the statutory prohibition against examination of medical liability review panel members, whose decision is treated as expert opinion, unconstitutionally usurps the supreme court's exclusive rule-making powers under Art. 6, § 5 of the Arizona Constitution, particularly where the court has promulgated rules of

evidence expressly providing for cross-examination of expert witnesses.

## I. INFORMED CONSENT

In reviewing the trial court's granting of the motion for directed verdict, this court must view the evidence and inferences arising therefrom in a light most favorable to appellant. *Rocky Mountain Fire & Casualty Co. v. Biddulph Oldsmobile*, 131 Ariz. 289, 640 P.2d 851 (1982).

At common law, two independent actions existed against a a doctor who allegedly failed to obtain informed consent to surgery. One action was for the intentional tort of battery and the other action was for medical malpractice, a suit premised upon negligence. *Hales v. Pittman*, 118 Ariz. 305, 576 P.2d 493 (1978). The Arizona legislature, however, has chosen to alter the common law causes of action. A.R.S. § 12–562(B) provides that "[n]o medical malpractice action brought against a licensed health care provider shall be based upon assault and battery." Therefore, the traditional action for battery has been abolished in Arizona. Our legislature, however, has retained the right to an action for medical malpractice based upon the lack of informed consent. A.R.S. § 12–561(2) provides:

> "Medical malpractice action" or "cause of action" for medical malpractice means an action for injury or death against a licensed health care provider based upon such provider's alleged negligence, misconduct, errors or omissions, or breach of contract in the rendering of health care, medical services, nursing services or other health-related services or for the rendering of such health care, medical services, nursing services or other health-related services, *without express or implied consent*. (Emphasis added.)

In order to establish the prima facie case for medical malpractice, A.R.S. § 12–563 requires a showing of two elements:

1. The health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances; and

2. Such failure was a proximate cause of the injury.

Appellee's argument is that appellant's case was based strictly on battery, which is superseded by our statute, and that he did not present a prima facie case of medical malpractice. In reviewing Dr. Gaal's testimony, however, we find this assertion to be without merit.

 Dr. Gaal repeatedly testified that a reasonable and prudent thoracic surgeon under these circumstances (1) would have taken a biopsy to determine whether the tumor was malignant and then advised appellant of his alternatives, and (2) having commenced surgery and seen the extent of the tumor, would have withdrawn to advise appellant of his options at that point. Dr. Gaal also testified that the surgery was the cause of appellant's injury. This testimony was sufficient to establish a prima facie case, both as to the standard of care and causation, and the trial court erred in granting the directed verdict. Due to the statutory scheme, any liability of a physician must be for malpractice and not for "battery." The duty of a physician in a malpractice case is the duty to disclose the risks as measured by the usual practices of the medical profession. *Riedisser v. Nelson*, 111 Ariz. 542, 534 P.2d 1052 (1975).

 Appellee next argues that appellant's lawyer "sandbagged" the court by not producing the exact pages of Dr. Gaal's testimony to establish his prima facie case. Appellee states that the trial court does not have the duty to search the record for evidentiary matters which the parties failed to identify. *McWain v. Tucson General Hospital*, 137 Ariz. 356, 670 P.2d 1180 (App.1983). While that proposition is true, it does not apply to the present case. Appellant's attorney did direct the trial court's attention to the testimony of Dr. Gaal which establishes the prima facie case. Since the motion for directed verdict occurred almost immediately after that testi-

mony, appellant's attorney could not have been expected to produce the specific pages of testimony at that time. The granting of the motion for directed verdict is reversed.

## II. EXTENT OF NEW TRIAL

 Appellee argues that even if we reverse the directed verdict, as we have done, there should not be a trial on all issues, but rather solely on the issue of informed consent. Rule 59(h), Rules of Civil Procedure, 16 A.R.S., provides:

> A new trial, if granted, shall be only a new trial of the question or questions with respect to which the verdict or decision is found erroneous, *if separable.* (Emphasis added.)

In *Southern Pacific Company v. Gastelum,* 36 Ariz. 106, 283 P. 719 (1929), our supreme court stated:

> The court should never permit a party to an action to select for retrial the issues decided against him and upon the rehearing treat those decided in his favor as settled, when the issues are interwoven and cannot be separated without injustice to the other party.

36 Ariz. at 125, 283 P. at 725.

We find that the issues of informed consent and medical malpractice are interwoven and cannot be separated. Accordingly, there must be a new trial on all issues. Dr. Gaal testified that appellee violated the standard of care by completing the surgery, and that he should have stopped the operation and gotten the patient's consent before proceeding. Much of Dr. Gaal's testimony related both to the surgical malpractice and the informed consent issues. The issues were interwoven by common witnesses, testimony and evidence. Accordingly, a new trial is granted on all issues.

## III. DEPOSITION OF MEDICAL LIABILITY REVIEW PANEL MEMBER

 Appellant alleges that one of the members of the medical liability review panel, which found no malpractice, was prejudiced by his association with appellee. The trial court refused to permit appellant

to depose that panel member. We find that this issue was waived and therefore is not properly raised on appeal. Pursuant to A.R.S. § 12–567(B)(5), any person selected to serve on the review panel may be challenged for cause. Appellant failed to make such a challenge and therefore waived the issue.

Affirmed in part, reversed and remanded in part.

HOWARD, P.J., and FERNANDEZ, J., concur.