846 A.2d 1035

**Tasha MOLÉ**

v.

**Jerrilyn JUTTON, et al.**

**No.  126, Sept. Term, 2002.**

Court of Appeals of Maryland.

April 13, 2004.

George Harper, Upper Marlboro, for appellant.

David A. Levin (Michelle R. Callender, Wharton, Levin, Ehrmantraut & Klein, P.A., on brief), Annapolis, for appellees.

Argued before BELL, C.J., ELDRIDGE *, RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, JJ.

---

* Eldridge, J. now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled

BELL, C.J.

The issue we decide in this case is what is the proper cause of action when, in the course of performing a surgical procedure, a surgeon exceeds the consent he or she was given. Maintaining that the tort of battery is the proper cause of action, the appellant, Tasha Molé, in addition to a negligence claim, included a count for battery in the complaint she filed in the Circuit Court for Anne Arundel County against the appellees, Dr. Jerrilyn Jutton, ("Dr. Jutton"), Dr. George E. Linhardt, and Dr. Jutton's employer, Linhardt Surgical Associates, P.A. and, at the conclusion of the trial, requested the trial court to instruct the jury as to that count. The trial court declined to do so. The appellant challenges that ruling on this appeal. We shall affirm the judgment of the Circuit Court.

## I.

Tasha Molé, the appellant, consulted a doctor, after experiencing pain in her left breast, in which she also discovered a lump. She was referred for a sonogram of her breast, the results of which revealed that the appellant had two tender masses in her left breast, one of which was determined to be a "simple cyst," *i.e.* a fluid filled sac, and the other a "complex cyst containing a mural nodule."[1] As to the latter, a biopsy was "suggested," due to the possibility of malignancy.

On her doctor's advice, the appellant consulted a surgeon, the appellee, Dr. Jutton, who was employed by Linhardt Surgical Associates, P.A., with respect to how best to proceed with regard to the cysts. Having initially attempted to aspirate[2] the cysts to determine if they were cancerous, but

---

pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. A mural nodule is a small lump on the cyst wall.

2. In medical terms, to aspirate means to remove something, usually liquids or gasses, by means of a suction device. While attempting to aspirate the cyst, Dr. Jutton was able to obtain a "milky fluid" and

finding that "she was too tender for me to aspirate,"with a needle, Dr. Jutton determined that "the best way to proceed would be a surgical procedure to remove the solid nodule."

In preparation for the surgery, Dr. Jutton informed the appellant of the risks involved, including post-operative infection. The appellant consented to the expected procedure, "excision breast mass left." She also agreed:

> "I have been advised that during the course of this admission, conditions unknown prior to the treatment may be revealed which necessitate or make advisable an extension of the original procedure or a different procedure than that referred to in Paragraph 1. I, therefore, authorize and request that the above named doctor, his assistants and associates perform such procedures or render such treatment as is necessary or advisable in the exercise of professional judgment."

Thus, the appellant consented to any necessary extension of the surgery or to any different procedure that Dr. Jutton, in the "exercise of professional judgment," deemed "necessary or advisable."

During the surgical procedure, tissue surrounding the two cysts was removed and some of the appellant's milk ducts were cut, according to Dr. Jutton, "in the process of removing the mass." Dr. Jutton also subsequently testified, "[t]he breast is composed of milk ducts, milk ducts get cut when you do incision."

The appellant filed an action against the appellees in the Circuit Court for Anne Arundel County.[3] The complaint

---

indicated on her notes that the fluid may suggest the "presence of an underlying infection."

**3.** The appellant waived arbitration in accordance with Maryland Code (1973, 2000 Repl.Vol.) § 3–2A–06B (b)(1) of the Courts and Judicial Proceedings Article. That section provides:

"(b)(1) Subject to the time limitation under subsection (d) of this section, any claimant may waive arbitration at any time after filing the certificate of qualified expert required by §§ 3–2A–04(b) of this subtitle by filing with the Director a written election to waive arbitra-

contained two counts, one for medical negligence and the other for battery. The battery count was premised on Dr. Jutton's having cut the milk ducts leading to her left nipple during the surgery to remove the two cysts, without the appellant's authorization, that Dr. Jutton exceeded the scope of the consent she was given. At the conclusion of the trial, the appellant requested that the jury be given an instruction on battery, as follows:

"15:2: BATTERY—Liability

"a. Generally

"A battery is an intentional and unlawful touching which is harmful or offensive.

"b. Touching

"Touching includes the intentional putting into motion of anything which touches another person, or which touches something that is connected with, or in contact with, another person.

"c. Harmful

"A touching is harmful if it causes physical pain, injury or illness to the plaintiff.

"d. Offensive

"A touching is offensive if it offends a plaintiff's reasonable sense of personal dignity."

The trial court denied the appellant's request. Instead, it gave the jury the following instruction:

"A physician has the duty to obtain the consent of a patient after disclosing to the patient the nature of the condition to be treated, the nature of the treatment being proposed, the

---

tion signed by the claimant or the claimant's attorney of record in the arbitration proceeding.

"(2) The claimant shall serve the written election on all other parties to the claim in accordance with the Maryland Rules.

"(3) If the claimant waives arbitration under this subsection, all defendants shall comply with the requirements of §§ 3–2A–04(b) of this subtitle by filing their certificates at the Health Claims Arbitration Office or, after the election, in the appropriate circuit court or United States District Court."

probability of success of that treatment, the alternatives, if any to the treatment, and every material risk of negative consequences of the treatment being proposed.

"A material risk is a risk which the physician knows or ought to know would be significant to a reasonable person who is being asked to decide whether to consent to a particular medical treatment or procedure. The purpose of the require [sic] explanation is to enable the patient to make an intelligent and informed choice about whether to undergo the treatment [being] proposed. A physician is negligent if the physician fails to disclose to the patient all material information and risks.

"On the other hand, a physician is not negligent if the physician does disclose all material information and risk and the patient thereafter consents to the treatment.

"In order to impose liability upon the physician, the Plaintiff must prove that a reasonable person would not have consented if properly informed. The question is not whether this particular Plaintiff would have consented if given proper information but whether a reasonable person in the same circumstances would have consented or not."

The jury returned a verdict in favor of the appellant, awarding her $22,500.00 in damages. Judgment was entered on the verdict against the appellees. Despite the appellant's success **with respect to** the negligence count, she noted an appeal, in which she challenged the trial court's refusal to instruct the jury on battery. Prior to any proceedings on the merits in the intermediate appellate court, this Court, on its own initiative, issued the writ of certiorari to address the important question that this case presents. *Mole v. Jutton,* 373 Md. 406, 818 A.2d 1105 (2003).

I.

The threshold issue that must be addressed is whether the appellant's cause of action should be dismissed as untimely. The appellees responded to the appellant's appeal by filing a Motion to Dismiss the appeal. Relying on Maryland Rule 8

202(a),[4] they argued that the appellant's appeal was untimely. The Court of Special Appeals denied the appellees' motion to dismiss, indicating that they should seek that relief in their appellate brief. The appellees have included in their brief in this Court a motion to dismiss the appellant's appeal.

Maryland Rule 8–202(a) requires that, "[e]xcept as otherwise provided in this Rule or by law, the notice of appeal shall be filed within 30 days after entry of the judgment or order from which the appeal is taken." An appeal filed more than thirty (30) days after entry of judgment is untimely and, therefore, must be dismissed. The jury returned its verdict in this case on March 20, 2002 and judgment was entered the same day. (Respondent's brief at appendix 64–65). The appellant had thirty (30) days from that date to file her notice of appeal. Accordingly, to be timely, the notice of appeal was required to be filed by April 19, 2002.

Maryland Rule 1–322(a) provides:

"The filing of pleadings and other papers with the court as required by these rules shall be made by filing them with the clerk of the court, except that a judge of that court may accept the filing, in which event the judge shall note on the papers the filing date and forthwith transmit them to the office of the clerk. No filing of a pleading or paper may be made by transmitting it directly to the court by electronic transmission, except pursuant to an electronic filing system approved under Rule 16–307 or 16–506."

We considered the meaning and operation of Rule 1–322(a) in *Blundon v. Taylor*, 364 Md. 1, 11, 770 A.2d 658, 664 (2001) and concluded:

"that Rule 1–322 is so clear and unambiguous in this regard that it does not require construction. Section (a) requires

---

4.  Maryland Rule 8–202(a) provides:

    "Generally. Except as otherwise provided in this Rule or by law, the notice of appeal shall be filed within 30 days after entry of the judgement or order from which the appeal is taken. In this Rule, 'judgment' includes a verdict or decision of a circuit court to which issues have been sent from an Orphan's Court."

that, to be filed, pleadings and papers must be actually delivered, either in person or by mail, to the clerk or a judge of the court in which they are sought to be filed. That this is so is made clear by the provision that the filing of pleadings or papers is accomplished by filing them with the clerk or a judge of the court and the prohibition, excepting only electronic filing systems pursuant to Rule 16–307, against directly transmitting such pleadings and papers by electronic transmission."

See also Paul V. Niemeyer & Linda M. Shuett, MARYLAND RULES COMMENTARY (2d ed.1984) at 35, in which, addressing Rule 1–322(a), it is observed:

"A pleading or paper is filed by actual delivery to the clerk. This may be accomplished in person or by mail. However, the date of filing is the date the clerk receives the pleading, not the date when the pleading was mailed. Filing therefore differs from service of a pleading or paper by mail, which is, in fact, complete upon mailing (see Md. Rule 1–321(a)) . . . This rule permits a pleading or paper to be filed with a judge, assuming the judge agrees to accept the pleading or paper for filing."

See also, Paul V. Niemeyer & Linda M. Shuett, MARYLAND RULES COMMENTARY (2d ed.1992) at 41. The issue presented in Blundon "involve[d] the validity of 'faxing'—transmitting by facsimile—a pleading or paper to the Maryland Health Claims Arbitration Office." Id. at 3, 770 A.2d at 669. It arose because the copy of the petitioner's Request For Modification of Arbitration Award "faxed" to the Health Claims Arbitration Office was received timely, and was so stamped by the HCAO, but the copy he mailed on the same day, by regular mail, was received in the Health Claims office one day after the deadline for filing the request for modification. Id. at 6–7, 770 A.2d at 661. Concluding that Maryland Rule 1–322 does not permit the filing of pleadings or papers via facsimile by direct electronic transmission, we held:

"It follows, therefore, that the 'faxed' copy of the petitioner's request to modify the panel award may not be considered in determining whether his request was filed timely.

And, because it is undisputed that the mailed copy of the request was not received until April 30, 1997, one day after the deadline set by §§ 3–222 for filing the application to modify or correct the award, it also follows that the petitioner's application to modify or correct the award came too late."

*Id.* at 16–17, 770 A.2d at 667.

Thus, unlike service by mail, which is complete upon mailing, filing is not complete until the clerk of the court or a judge receives the document. *See* Maryland Rule 1–321(a); [5] *see* MARYLAND RULES COMMENTARY (2d ed.1984) *supra* at 35. *See also* MARYLAND RULES COMMENTARY (2d ed.1992) *supra* at 41. On the other hand, the date stamped on a pleading or paper is not necessarily dispositive of the date on which the pleading or paper was filed.

In *In re Vy N.,* 131 Md.App. 479, 482, 749 A.2d 247, 249 (2000), the Court of Special Appeals reviewed *de novo* a trial court's determination that the delinquency petitions at issue in that case were "filed" timely. The petitions, which had been delivered to the Clerk's Office for filing after 4:30 p.m., when the trial court closed, the trial court found, a finding that the intermediate appellate court did not disturb, were accepted by someone in the clerk's office, rather than a judge, but stamped

---

**5.** Maryland Rule 1–321(a) provides:

"a) *Generally.* Except as otherwise provided in these rules or by order of court, every pleading and other paper filed after the original pleading shall be served upon each of the parties. If service is required or permitted to be made upon a party represented by an attorney, service shall be made upon the attorney unless service upon the party is ordered by the court. Service upon the attorney or upon a party shall be made by delivery of a copy or by mailing it to the address most recently stated in a pleading or paper filed by the attorney or party, or if not stated, to the last known address. Delivery of a copy within this Rule means: handing it to the attorney or to the party; or leaving it at the office of the person to be served with an individual in charge; or, if there is no one in charge, leaving it in a conspicuous place in the office; or, if the office is closed or the person to be served has no office, leaving it at the dwelling house or usual place of abode of that person with some individual of suitable age and discretion who is residing there. Service by mail is complete upon mailing."

as received the first thing the next morning. Characterizing Rule 1–322(a) as one that "allows attorneys to meet filing deadlines," quoting Melvin J. Sykes, Esq., November 12, 1983 meeting of the Rules Committee, the Court of Special Appeals endorsed the view of the Rules Committee, that the rule "(1) 'effectually makes the court always open for the filing of papers,' and (2) provides that 'the filing date' is 'the day the judge accepts the paper.'" *Id.* at 483, 749 A.2d at 250 (footnote omitted). The court explained:

"When a pleading or other paper must be filed within a particular number of days, it can be filed anytime before midnight on the last day provided that—if the Clerk's Office has closed—it is delivered to a judge or to an employee of the Clerk's Office who is authorized to accept delivery of such a document during the hours that the office is open to the public. Nothing in the applicable statute or in the Maryland Rules of Procedure provides that anything delivered to a clerk after 4:30 p.m. is deemed to have been filed on the next day that the Clerk's Office is open. As is pointed out in the *Maryland Rules Commentary, supra* at 41, judges often receive date sensitive documents *after* the clerk's office has closed for the day. We take judicial notice that clerks do so as well. The correct procedure in such a situation calls for the judge (or other authorized person) to (1) note (or stamp) the minute, hour and day that the document is received; and (2), as soon as is practicable thereafter, present it to the employee(s) of the Clerk's Office assigned to process such documents. In these situations, the document is deemed 'received for filing' on the day that it is delivered to the judge or other authorized person."

*Id.* at 483–84, 749 A.2d at 250.

Rather than deliver the notice to the Clerk in person, the appellant chose to mail it. She did so on April 17, 2002, addressing it to "Clerk, Circuit Court Anne Arundel, Appeals Division, 7 Church Circle, Annapolis, Maryland 21401." On its letterhead, the address of the Anne Arundel County Circuit Clerk's office is listed as P.O. Box 71, Church Circle, Annapo-

lis, Maryland 21404–0000.[6]   The notice of appeal was delivered by the Postal Service to Post Office Box 71 at 7:45 a.m. on April 19, 2002.   The docket entries reflect that the notice was filed on April 22, 2002, at 9:55 a.m.

The appellees maintain the appellant did not timely file the notice of appeal with the Clerk.   They argue that "filing" requires the actual receipt of the pleading or paper by the Clerk.   The "delivery of the Notice of Appeal to the *post office box* of the Clerk of the Court does *not* qualify as actual filing of the pleading," they submit. (respondent's brief at 32.)   That is so, the appellees assert, because "a filing must be made with the clerk of the court, *directly.*" (respondent's brief at 33).

Not surprisingly, the appellant does not agree.   She argues, on the contrary, that the notice of appeal was filed on April 19, 2002, rather than April 22, 2002, because that is the date the notice of appeal was delivered to the post office box that the Clerk gave as its mailing address and, therefore, was actually received by the Clerk.   We agree with the appellant.

█   The appellees acknowledge that a pleading or paper may be filed by mail.   That would occur when the pleading or paper was delivered to, and, therefore, received in, the Clerk's Office.   The situation is simple and straight forward when the mail is delivered by the postal service directly to, and, thus, is accepted directly in the Clerk's office.   What complicates this case and makes it unique is that the Clerk's mailing address is to a post office box.   Therefore, mail, including pleadings and papers for filing, rather than being delivered directly to the Clerk's office, is delivered to the Clerk's post office box.   Thus, to get the pleading or paper to the Clerk's Office requires another step, someone must pick up the mail from the post office box and deliver it to the Clerk's Office.   We

---

**6.**   The address that appears on the Judiciary website for the Circuit Court for Anne Arundel County is the same as the address to which the appellant forwarded the notice of appeal, 7 Church Circle, Annapolis, Maryland 21401.   It is interesting to note that the zip code is different from the zip code for the Post Office Box, 21401 as opposed to 21404. The Circuit Court also uses a Post Office Box, the zip code for which is, like that for the Post Office Box for the Clerk's Office, 21404.

believe that, whether delivered by the Postal Service directly to the Clerk's Office or to a post office box, the mail is received, and therefore pleadings or papers filed, when the mail is delivered to the address designated by the Clerk. That the Clerk may have the mail delivered to a post office box, rather than to his office directly, does not change the analysis or the result. Delivery of pleadings or papers by the Postal Service to the address designated by the addressee is receipt by the addressee of those pleadings or papers. A person aware of the filing deadline, who acts reasonably to file pleadings timely, should not be at the mercy of the procedure set up by the Clerk's Office for its convenience.

To agree with the appellees, we would have to ignore altogether the delivery of the mail by the Postal Service, in accordance with express instructions from the Clerk, to the place designated and focus only on when it is actually taken or delivered, by whomever, to the Clerk's Office. There would be no certainty; where the delivery is to a post office box, a day, or more, could elapse, as it did here, between delivery to the post office box and actual delivery to the Clerk's Office. Moreover, the appellees' position completely eliminates the option of mailing pleadings or papers later in the period, at least where the Clerk has implemented a system of mail collection off-premises.

We hold that delivery of the appellant's notice of appeal by the Postal Service to the Post Office Box designated by the Clerk as his mailing address constitutes actual delivery of that notice to the Clerk under Md. Rule 8–202. Accordingly, the notice was timely filed.

## II.

To be sure, in Maryland, consistent with the general rule, *see, e.g. McGrady v. Wright*, 151 Ariz. 534, 729 P.2d 338, 341 (1986);[7] *Cobbs v. Grant*, 8 Cal.3d 229, 104 Cal.Rptr. 505,

---

7. By statute, in Arizona, "[n]o medical malpractice action brought against a medical provider shall be based upon assault and battery." A.R.S. § 12–562(B).

502 P.2d 1, 7–8 (1972); *Kennis v. Mercy Hospital Medical Center,* 491 N.W.2d 161, 164 (Iowa 1992); *Paul v. Lee,* 455 Mich. 204, 568 N.W.2d 510, 514 (1997), *rev'd on other grounds, Smith v. Globe Life Ins.,* 460 Mich. 446, 597 N.W.2d 28 (1999); *Kohoutek v. Hafner,* 383 N.W.2d 295, 298–300 (Minn.1986); *Baltzell v. Van Buskirk,* 752 S.W.2d 902, 906 (Mo.Ct.App. 1988); *Howard v. University of Medicine and Denistry of New Jersey,* 172 N.J. 537, 800 A.2d 73, 78–79 (2002); *Dries v. Gregor,* 72 A.D.2d 231, 424 N.Y.S.2d 561, 564 (N.Y.A.D.1980); *McPherson v. Ellis,* 305 N.C. 266, 287 S.E.2d 892, 895 (N.C. 1982);[8] *Ashe v. Radiation Oncology Assoc.,* 9 S.W.3d 119, 121 (Tenn.1999); *Lounsbury v. Capel,* 836 P.2d 188, 193–94 (Utah. App.1992);[9] *Martin v. Richards,* 192 Wis.2d 156, 531 N.W.2d 70, 76–77 (1995), a claim under the informed consent doctrine must be pled as a tort action for negligence, rather than as one for battery or assault. This pronouncement was made first in *Sard v. Hardy,* 281 Md. 432, 434, 379 A.2d 1014, 1017 (1977), in which this Court "address[ed] for the first time the so-called doctrine of informed consent." After stating the doctrine and defining its contours, *id.* at 438–440, 379 A.2d at 1019–20, we

"note[d] in passing our approval of the prevailing view that a cause of action under the informed consent doctrine is properly cast as a tort action for negligence, as opposed to battery or assault. *See, e.g., Cobbs v. Grant,* 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1, 8 (1972); *Perin v. Hayne,* 210 N.W.2d 609, 618 (Iowa 1973); *Downer v. Veilleux,* 322 A.2d 82, 89–90 (Me.1974); *Trogun v. Fruchtman,* 58 Wis.2d 569, 207 N.W.2d 297, 311–13 (1973)."

*Id.* at 440 n. 4, 379 A.2d at 1020 n. 4. That approval has been confirmed in subsequent opinions of this Court, *Faya v. Almaraz,* 329 Md. 435, 450 n. 6, 620 A.2d 327, 334 n. 6 (1993) ("The cause of action for lack of informed consent is one in

---

8. Like Arizona, the cause of action for lack of informed consent is, in North Carolina, statutory. *See* N.C.G.S. 90–21.13.

9. The action for lack of informed consent is also statutory in Utah. *See* Utah Code Ann. § 78–14–5(1).

tort for negligence, as opposed to battery or assault."); *Wright v. Johns Hopkins Health Systems Corporation,* 353 Md. 568, 596 n. 16, 728 A.2d 166, 179 n. 16 (1999) ("Wright's parents' cause of action for lack of informed consent is properly a cause of action for negligence."); *Dingle v. Belin,* 358 Md. 354, 368, 749 A.2d 157, 164–65 (2000) ("In [*Sard, supra.*], we recognized, as a separate negligence-based (rather than battery-based) cause of action, the performance of a medical procedure by a physician without the informed consent of the patient."), and followed by the Court of Special Appeals, *Zeller v. Greater Baltimore Med. Center,* 67 Md.App. 75, 81–82, 506 A.2d 646, 651 (1986)(pronouncing that "the rendering of medical services absent informed consent, if pled properly, constitutes a separate and new count of negligence."); *Miller v. Schaefer,* 80 Md.App. 60, 72 n. 5, 559 A.2d 813, 819 n. 5 (1989) (quoting *Sard); Yonce v. SmithKline Beecham Clinical Laboratories, Inc., et al,* 111 Md.App. 124, 154–155, 680 A.2d 569, 583–584 (1996) (reasoning that "[t]he doctrine of informed consent, adopted in *Sard, supra,* is based on principles of negligence and imposes upon a physician a duty to disclose material risks and available alternatives so that a patient can make an informed decision."), and federal courts applying Maryland law, *Lipscomb v. Memorial Hospital,* 733 F.2d 332, 335 (4th Cir.1984) (noting that, under Maryland law, the case presented a claim grounded upon lack of informed consent, rather than lack of consent, which properly is cast as a tort action for negligence as opposed to battery); *Robinson v. Cutchin,* 140 F.Supp.2d 488, 492–93 (D.Md.2001).

Noting that "Maryland tort law . . . recognizes and protects an individual's right to determine what shall be done with his or her body," and asserting that "no other case in Maryland addresses [or has addressed] the question presented by this case," the appellant submits that the pronouncement in *Sard* with respect to the informed consent doctrine, and the subsequent confirmations thereof, "[do] not rise to the level of *stare decisis.*" Relying on out-of-state authority, which she characterizes as holding that "physician's operations in excess of the

scope of informed consent may be pled as a battery," [10] the appellant argues:

"A physician who exceeds the scope of consent is committing the tort of battery, by performing an unauthorized touching, offensive to the victim, and is denying the victim the right to determine what shall be done with her own body. Maryland should recognize that a physician may be held liable in battery for exceeding the scope of consent."

We reject the appellant's argument that the *Sard* pronouncement, recognizing the separate negligence-based (rather than battery-based) cause of action of lack of informed consent, does not rise to the level of *stare decisis*. As we have seen, this court has stated that recognition clearly and reiterated it on several occasions, in contexts indicating that it was a holding, rather than dicta. *See Faya, supra,* 329 Md. at 450, 620 A.2d at 334; *Dingle, supra,* 358 Md. at 368, 749 A.2d at 164–165.

On the other hand, the appellant's observation that no opinion of this Court or of the Court of Special Appeals has addressed the precise issue this case presents is accurate. In *Sard,* Mrs. Sard, who was then pregnant for the third time, selected sterilization from among the options her gynecologist gave her, consistent with her wish not to become pregnant again. *Id.* at 436, 379 A.2d at 1018. While delivering Mrs. Sard's third child by caesarian section and pursuant to a consent form executed by Mrs. Sard and her husband, the doctor performed a bilateral tubal ligation. *Id.* When Ms. Sard became pregnant for the fourth time, she and her husband sued the doctor, alleging negligent performance of the bilateral tubal ligation and, "specifically . . . that [the

---

**10.** The appellees challenge "much of this purported authority" as having been overruled by statute or reversed on appeal or being otherwise distinguishable factually. Without directly responding to the challenge on the merits, the appellant persists in her arguments, suggesting that some of the cases the appellees rely on, in fact recognize that a battery claim lies for exceeding the scope of a consent and that an examination of the appellees' arguments confirm the validity of her position.

doctor] negligently failed to advise them that the surgical procedure employed by him was not absolutely certain to succeed and that [the doctor] failed to apprise the Sards of the potential results of the operation and alternative methods of sterilization, thereby precluding [them] from giving their informed consent." *Id.* at 435, 379 A.2d at 1017. The Sards did not allege that the doctor committed a battery. Consequently, the Court did not mention at all medical battery; although the Court discussed informed consent, its nature and doctrinal basis, it did not discuss, as many courts have done, *see e.g. Howard*, 800 A.2d at 77–78 (analyzing the distinction between lack of informed consent and battery and noting that "[t]he doctrine of informed consent was tied initially to the tort of battery, but its evolution has firmly established it as a negligence concept."); *Lounsbury v. Capel*, 836 P.2d at 194 (indicating, quoting *Baltzell v. Van Buskirk*, 752 S.W.2d at 906, that "the informed consent doctrine apparently began as an offshoot of battery"); *Martin v. Richards*, 531 N.W.2d at 76 ("Traditionally, informed consent was based upon the tort of battery."). *See Cobbs v. Grant*, 104 Cal.Rptr. 505, 502 P.2d at 7–8; *Kohoutek v. Hafner*, 383 N.W.2d at 298–99, the relationship of the informed consent doctrine to medical battery.

*Faya v. Almaraz* involved two patients of a surgeon, who was infected with the AIDS virus and who operated on each of them, but without first informing them of the fact of that infection. 329 Md. at 438, 620 A.2d at 328. The patients, in separate actions against the doctor and the hospital at which he had operative privileges, alleged "various wrongful acts," [11] one of which, pled by one of the patients, was a battery count. *Id.* at 441, 620 A.2d at 330. The trial court dismissed all of the counts, holding that the patients failed to allege a legally compensable injury. *Id.* at 442–43, 620 A.2d at 330. This

---

11. Both patients alleged negligence, negligent failure to obtain the patient's informed consent, fraud and intentional infliction of emotional distress. One of them alleged, in addition, negligent misrepresentation and breach of contract, while the other added loss of consortium, breach of fiduciary duty and battery. *Faya v. Almaraz*, 329 Md. 435, 441, 620 A.2d 327, 330 (1993).

Court, concluding that the gist of the complaints was the surgeon's wrongful conduct in operating on the patients without first telling them that he was HIV-positive, and later ill from AIDS, and of the risk of contracting HIV as a result of the surgery, *id.,* determined that at their core was the surgeon's negligence, the failure to disclose his HIV-positive status, and, therefore, addressed only the negligence counts. As to them, we concluded:

"In evaluating the well-pleaded allegations of the complaints with respect to the duty component of the tort of negligence, we cannot conclude that they are legally insufficient to survive the appellees' motions to dismiss; in other words, we cannot say as a matter of law that no duty was imposed upon Dr. Almaraz to warn the appellants of his infected condition or refrain from operating on them."

It was in this context that the Court confirmed the *Sard* pronouncement, "[t]he cause of action for lack of informed consent is one in tort for negligence, as opposed to battery or assault." 281 Md. at 440, 379 A.2d at 1017. Accordingly, the Court ruled that the trial court erred in dismissing the negligence counts based on the failure of the surgeon to disclose his infected condition. *Id.* at 459, 379 A.2d 1014. But rather than ordering reinstatement of only the negligence counts addressed, the Court opined:

"In view of our disposition of the basic negligence counts grounded on Dr. Almaraz's asserted failure to warn the appellants of his infected condition, and because the damages claimed on all counts are essentially the same, the trial judge erred in dismissing the other counts as well. As we see it, after viewing the allegations of the complaints in support of these counts, dismissal was not appropriate in the circumstances."

*Id.* at 460–61, 620 A.2d at 339.

Both a count for battery and a count for lack of informed consent were included in the complaint in *Wright* against Hopkins for wrongfully prolonging the life of an AIDS patient by resuscitating him from cardiac arrest. As we have seen,

we reiterated that the cause of action under the informed consent doctrine is negligence-based. 353 Md. at 595 n. 16, 728 A.2d at 179 n. 16. We dismissed that count, however, because "Section 5–607,[12] under which the CPR was authorized, accords with the common law doctrine of informed consent, which is suspended in an emergency situation." *Id.* at 595, 728 A.2d at 179. The battery claim, although preserved by cross-petition for certiorari, was abandoned, as no argument as to it was included in the brief of the proponent of that argument. *Id.* at 596, 728 A.2d at 179.

In *Dingle v. Belin,* the complaint alleging negligent performance of gall bladder surgery by a resident physician under supervision of a surgeon, who, it also was alleged, contracted to perform the surgery himself, included, in addition, a count for lack of informed consent and a count for battery. 358 Md. at 358, 749 A.2d at 159. The lack of informed consent count, which we specifically mentioned was negligence-based, was submitted to the jury, which found in favor of the surgeon. *Id.* at 359, 749 A.2d at 159. The battery count was dismissed at the end of the surgeon's case and not pursued on appeal. *Id.*

The issue that this case presents was addressed by the United States District Court for the District of Maryland in *Robinson v. Cutchin.* There, a patient, whose child was delivered by an emergency caesarean section, and her husband sued her doctor and the hospital for damages they allegedly suffered as a result of the doctor's performance of a

---

**12.** Maryland Code (1982, 1994 Repl.Vol., 1998 Cum.Supp.) § 5–607 [of the Health–General Article] reads:

"A health care provider may treat a patient who is incapable of making an informed decision, without consent, if:

"(1) The treatment is of an emergency medical nature;

"(2) A person who is authorized to give the consent is not available immediately; and

"(3) The attending physician determines that:

"(i) There is a substantial risk of death or immediate and serious harm to the patient; and

"(ii) With a reasonable degree of medical certainty, the life or health of the patient would be affected adversely by delaying treatment to obtain consent."

bilateral tubal ligation, for which no informed consent was given, and which prevented her having any additional children. 140 F.Supp.2d at 490. In addition to the count alleging lack of informed consent, the complaint contained, *inter alia,* a count for battery, which, it was alleged, was committed with malice. *Id.* The defendants moved *in limine* to preclude the pursuit of the battery count. *Id.* Treating that motion as one for summary judgment, the court entered summary judgment in favor of the defendants. *Id.* at 492. After reviewing the nature of assault and battery in Maryland, "the unpermitted application of trauma by one person upon any part of the body of another," citing *Saba v. Darling,* 72 Md.App. 487, 491, 531 A.2d 696 (1987), *aff'd* 320 Md. 45, 575 A.2d 1240 (1990) and MPJI 15:2,[13] *id.,* and noting that a cause of action for lack of informed consent is one sounding in negligence, rather than battery or assault, *id.,* citing *Sard* and *Faya v. Almaraz,* the court concluded:

> "This malpractice suit is an informed consent case in which Mrs. Robinson claims, *inter alia,* that Dr. Cutchin committed a battery. The intentional touching sought to be proved is that of a physician occurring during an operative procedure. Plaintiffs do not here contend that Mrs. Robinson did not consent to the emergency C–Section procedure. Moreover, Mrs. Robinson has not claimed that she suffered increased pain and discomfort because Dr. Cutchin, during the course of the operation to which she had consented, ... performed a tubal ligation in addition to the C–Section procedure. Although Mrs. Robinson consented to the initial touching by the doctor, the fact that the touching was more extensive than agreed upon does not amount to a battery in

---

**13.** "A battery is the intentional touching of a person without that person's consent. Touching includes the intentional putting into motion of anything which touches another person, or which touches something that is connected with, or in contact with, another person. In order to be a battery, the touching must be harmful or offensive. A touching is harmful if it causes physical pain, injury or illness. A touching is offensive if it offends the other person's reasonable sense of personal dignity."

a case where the critical issue is whether or not there was informed consent."

*Id.* (footnote omitted).

The court further elaborated:

"[E]vidence of record does not support a claim of battery. . . . There is no proof that Dr. Cutchin acted *'intending* to cause a harmful or offensive contact. . . .' *Nelson v. Carroll,* 355 Md. 593, 601, 735 A.2d 1096 (1999) (quoting RESTATEMENT (SECOND) OF TORTS § 13 (1965)). The touching by Dr. Cutchin was not harmful because it did not cause any additional physical pain, injury or illness other than that occasioned by the C–Section procedure. . . . *See* MPJI 15:2. Indeed, Mrs. Robinson claims that she was not even aware that the tubal ligation procedure had occurred until June of 1999, more than 21 months after the delivery of her baby. . . . Moreover, what occurred here did not offend Mrs. Robinson's reasonable sense of personal dignity. *Id.* She may, as claimed, have sustained emotional injury, and that claim will be presented to the jury in this case by way of her own testimony. However, the fact that she was not able to have a seventh child after previously giving birth to six children is hardly something which would offend her reasonable sense of personal dignity."

*Id.* at 493, 531 A.2d 696 (footnotes omitted).

The appellant accurately observes that this Court is not bound by the decision in *Robinson v. Cutchin.* We, however, find that case to be persuasive and, consequently, adopt its analysis and rationale, aligning ourselves, therefore, with the majority of the courts that have addressed this issue.[14] Thus,

---

14. There is contrary authority. See, e.g. *Valles v. Albert Einstein Medical Center,* 569 Pa. 542, 805 A.2d 1232, 1237 (2002) ("A claim of a lack of informed consent sounds in the intentional tort of battery because an operation performed without the patient's consent is deemed to be the equivalent to a technical assault"); *Sood v.Smeigh,* 259 Ga.App. 490, 578 S.E.2d 158, 162 (2003) (indicating installation of prosthetic patella in a backward position contrary to the instruction and design of the device would constitute an unconsented-to battery

as explained by *Cobbs v. Grant, supra,* 104 Cal.Rptr. 505, 502 P.2d at 8, one of the authorities that *Sard* cited with approval, albeit on another point,

> "The battery theory should be reserved for those circumstances when a doctor performs an operation to which the patient has not consented. When the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of deliberate intent to deviate from the consent given is present. However, when the patient consents to certain treatment and the doctor performs that treatment but an undisclosed inherent complication with a low probability occurs, no intentional deviation from the consent given appears; rather, the doctor in obtaining consent may have failed to meet his due care duty to disclose pertinent information. In that situation the action should be pleaded in negligence."

*See also Howard v. University of Medicine and Dentistry of New Jersey,* 800 A.2d at 80 (noting that battery, an intentional tort, "is reserved for those instances where either the patient consents to one type of operation but the physician performs a substantially different one from that foe which authorization was obtained, or where no consent is obtained" and an action for negligence for "where the surgery that was performed was authorized with arguably inadequate information"); *Lounsbury v. Capel,* 836 P.2d at 195 ("A typical medical battery case is that of a patient who consents to a particular procedure, but who receives treatment different from that which was authorized."); *Martin v. Richards,* 531 N.W.2d at 76 (stating that, traditionally, a battery cause of action existed where a patient did not authorize treatment or consented to one form of treatment and the physician performed a substantially different one); *Baltzell v. Van Buskirk,* 752 S.W.2d at 906 ("A claim in battery ... may lie ... where an operation is performed without the patient's consent or where the operation is not the surgical procedure to which the patient have his consent. By

---

"because such action was contrary to any informed consent granted to do a total knee replacement"). These simply are not persuasive.

contrast, where the consent to treatment was given but with insufficient or incomplete disclosure of risks, the cause of action is in medical malpractice based on negligence of the physician to meet a recognized standard of care.").

The appellant consented to the excision of the mass from her left breast, the procedure for which she consulted Dr. Jutton, and to any necessary extension of that surgery or to a different procedure should Dr. Jutton, in the "exercise of professional judgment," deem it "necessary or advisable." That procedure was the one that Dr. Jutton performed. The conduct about which she complains, the cutting of some of the appellant's milk ducts, occurred during the course of the performance of the excision of the left breast mass. Indeed, there was testimony, the appellant's only rebuttal to which is that it is ambiguous, that the cutting of the milk ducts was a necessary part of the expected procedure, that it did not occur during an independent or unrelated procedure. Consequently, as the appellees argue, "Appellant's only complaint can be that Dr. Jutton inadequately disclosed the potential risks associated with [the contemplated] procedure: that an incision close to the nipple area may result in the cutting of milk ducts, which could release/ correct Appellant's chronic nipple retraction. Such is the evidence of lack of informed consent, not of battery."

We hold that, under the circumstances *sub judice,* the trial court properly denied the appellant's request for a jury instruction on battery. *CSX Transportation, Inc. v. Continental Insurance Co.,* 343 Md. 216, 240, 680 A.2d 1082, 1094 (1996) ("[i]t is well settled that if, when read as a whole, the court's instruction to the jury clearly set forth the applicable law, there is no reversible error."), citing *Nizer v. Phelps,* 252 Md. 185, 202–03, 249 A.2d 112, 122 (1969); *Alston v. Forsythe,* 226 Md. 121, 135, 172 A.2d 474, 481 (1961). *See also Wegad v. Howard Street Jewelers,* 326 Md. 409, 414, 605 A.2d 123, 127 (1992).

**JUDGMENT AFFIRMED, WITH COSTS.**