*Thoyt Hackney v. State of Maryland*, No. 53, September Term, 2017

**CRIMINAL PROCEDURE — POST-CONVICTION PETITIONS — FILING —** The Court of Appeals adopted the "prison mailbox rule," under which a pleading is deemed to have been filed by an unrepresented inmate when the inmate delivers the pleading to prison authorities for mailing to the circuit court. The rule applies to the filing of a *pro se* petition for post-conviction relief under Maryland Code Annotated, Criminal Procedure § 7-103(b) and Maryland Rule 1-322(a).

Circuit Court for Baltimore City
Case Nos. 198022020, 23
Argued: February 5, 2018

IN THE COURT OF APPEALS
OF MARYLAND

No. 53

September Term, 2017

_____

THOYT HACKNEY

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Barbera, C.J.

_____

Filed: May 9, 2018

For many of us, the rapid advancement of technology has relegated the ordinary postal system—colloquially referred to as "snail mail"—to an option of last resort. For others, it is not entirely a thing of the past. The physical mail delivery system provides an important avenue of access to the courts for those who do not or cannot, for one reason or another, use electronic mail, electronic filing systems, or the Internet at large.

In this case, Thoyt Hackney, Petitioner here and unrepresented at the time of the events in question, testified that he delivered a petition for post-conviction relief to prison authorities three days before a statutory ten-year filing deadline. Two days later, prison authorities mailed the petition to the circuit court. It arrived and was date-stamped by the clerk one day after the deadline. The circuit court rejected the petition as untimely, finding that the relevant rule of procedure, Maryland Rule 1-322, required that the petition be "filed" with—i.e., received by—the Clerk of the Circuit Court prior to the deadline. The Court of Special Appeals affirmed.

Petitioner urges this Court to adopt the "prison mailbox rule," under which the papers or pleadings of unrepresented, incarcerated litigants are deemed to be "filed" when formally delivered to prison authorities for mailing to the circuit court. For the reasons that follow, we adopt the prison mailbox rule in the post-conviction context and apply it to the case at bar. We therefore reverse the judgment of the Court of Special Appeals with the direction that it remand the matter to the circuit court for that court to accept the petition as timely filed and proceed to consider the merits of the petition.

# I.

## Facts and Procedural History

A. *The Underlying Conviction*

In 1998, Petitioner was convicted by a jury in the Circuit Court for Baltimore City of two counts each of second-degree murder; use of a handgun in the commission of a crime of violence; and wearing, carrying, or transporting a handgun. He was sentenced to a total term of sixty years' imprisonment. The Court of Special Appeals issued an unreported opinion affirming Petitioner's convictions and sentences. *Hackney & Thompson v. State*, No. 1676, Sept. Term, 1998 (Md. Ct. Spec. App. June 16, 1999).

B. *Post-Conviction Proceedings*

Nearly ten years later, Petitioner, incarcerated and proceeding without the assistance of counsel, endeavored to file a post-conviction petition in the Circuit Court for Baltimore City. Such petitions are governed by the Maryland Uniform Postconviction Procedure Act, codified at Title 7 of the Criminal Procedure Article ("CP") of the Maryland Code. Absent extraordinary cause, post-conviction petitions are subject to a ten-year statute of limitations, CP § 7-103(b), and petitions are adjudged timely according to the dictates of Maryland Rule 1-322(a).

Petitioner submitted to the prison mailroom an envelope containing his petition and a certificate of service to the Baltimore City State's Attorney's Office bearing the date of October 20, 2008. There are two date stamps on the envelope. One stamp is on the back and appears to reflect that, on October 22, 2008, the mailroom date-stamped the envelope containing the petition and certificate of service. The other stamp, also dated October 22,

2008, is on the front of the envelope and appears to be the postmark, evidencing that prison authorities forwarded the envelope to the United States Post Office on that date. The Clerk of the Circuit Court for Baltimore City received and docketed the petition on October 24, 2008, one day after the statute of limitations had expired. On October 28, 2008, the Baltimore City State's Attorney filed a motion to dismiss the petition or, alternatively, a response to it. The motion to dismiss did not raise the statute of limitations issue.

Thereafter, counsel from the Public Defender's office entered an appearance and filed two supplemental petitions on Petitioner's behalf. In a footnote in the first supplemental petition, Petitioner's counsel argued that Petitioner's original petition had been timely filed. On September 10, 2010, the Circuit Court for Baltimore City held a hearing on the post-conviction petition. The court heard abbreviated argument on the statute of limitations issue, accepted into evidence various documents offered by the Public Defender, and heard testimony from Petitioner regarding dates relevant to the statute of limitations. Specifically, Petitioner testified that on October 20, 2008, he signed a certificate of service at the end of his petition, put it in an envelope with postage affixed, and mailed it.

The circuit court decided to reserve judgment on both the statute of limitations issue and the merits of the petition. For reasons not apparent in the record, the court delayed for five years before issuing an order dated November 19, 2015, dismissing Petitioner's petition as untimely under CP § 7-103(b) because it was "filed" on October 24, 2008, one day after the deadline. Although the court made no specific finding, it was—and remains—

3

undisputed that Petitioner delivered his petition to prison authorities no later than October 22, 2008.

C. *The Appeal*

Petitioner filed an application for leave to appeal in the Court of Special Appeals. The intermediate appellate court granted the application, transferred the case to the regular appeals docket, and in an unreported opinion affirmed the judgment of the circuit court. *Hackney v. State*, No. 2513, Sept. Term, 2015 (Md. Ct. Spec. App. July 18, 2017). The Court of Special Appeals began by analyzing the relevant statute and rule. At the time Petitioner filed his petition, CP § 7-103(b)(1) provided the following:

> Unless extraordinary cause is shown, in a case in which a sentence of death has not been imposed, a petition under this subtitle may not be filed more than 10 years after the sentence was imposed.

CP § 7-103(b)(1) (2001).[1] Maryland Rule 1-322(a) governs the filing of pleadings and other papers in circuit court. When Petitioner filed his petition, Rule 1-322(a) provided, in relevant part:

> **(a) Generally**. The filing of pleadings and other papers with the court as required by these rules shall be made by filing them with the clerk of the court, except that a judge of that court may accept the filing, in which event the judge shall note on the papers the filing date and forthwith transmit them to the office of the clerk.

---

[1] In 2013, as part of the bill abolishing the death penalty, the Maryland General Assembly struck from CP § 7-103(b)(1) the language "in a case in which a sentence of death has not been imposed" and re-designated it as CP § 7-103(b). 2013 Md. Laws, ch. 156 (S.B. 276). As the portions of the statute relevant to this appeal remain unchanged, we refer to the law in its current form throughout the opinion.

Md. Rule 1-322(a) (2008).[2] The Court of Special Appeals then reviewed *Molé v. Jutton*, a case involving claims for negligence and battery. The plaintiff, who did not prevail on one of her claims in the circuit court, sought appellate review on that issue and mailed a notice of appeal to the clerk's post office box rather than directly to the courthouse. 381 Md. 27 (2004). In that context, we had this to say about Rule 1-322(a):

> A pleading or paper is filed by actual delivery to the clerk. This may be accomplished in person or by mail. However, *the date of filing is the date the clerk receives the pleading, not the date when the pleading was mailed*. Filing therefore differs from service of a pleading or paper by mail, which is, in fact, complete upon mailing[.]

*Molé*, 381 Md. at 34 (emphasis added) (quoting Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 35 (2d ed. 1984)). The *Molé* Court deemed the clerk to have received the appellant's notice of appeal when it arrived at the post office box because the clerk's office had set up the post office box for its own convenience. *Id.* at 38.

The Court of Special Appeals held that Petitioner's petition for post-conviction relief was untimely under Rule 1-322(a) and *Molé* because it was received by the clerk one day after the expiration of the statute of limitations set forth in CP § 7-103(b). The court further held that Petitioner failed to show "extraordinary cause" under the statute. The court found nothing extraordinary about the filing of a petition by an unrepresented prisoner. Nor did the court lend any weight to Petitioner's arguments that his constitutional rights were violated because, first, those arguments did not appear to be preserved and,

---

[2] Currently, Rule 1-322(a) provides, "The filing of pleadings, papers, and other items with the court shall be made by filing them with the clerk of the court." Both iterations of the Rule require us to interpret the word "filing," so it makes little difference which version we cite. For consistency, we refer to Rule 1-322(a) in its current form.

second, even if they were, the statute "provide[s] an extremely long time to file a petition" and has an extraordinary cause "safety valve."

Finally, the Court of Special Appeals declined Petitioner's invitation to adopt the prison mailbox rule. The court reasoned that it lacked the authority to do so, concluding that this Court's decision in *Molé* controls the date of filing. We issued a writ of certiorari to determine whether the prison mailbox rule should be the law in Maryland.

## II.

## Standard of Review

On appeal, we review *de novo* the interpretation and application of Maryland statutory and case law. *Wallace v. State*, 452 Md. 558, 573 (2017); *Collins v. State*, 383 Md. 684, 688 (2004). As this case turns on the interpretation of the Uniform Postconviction Procedure Act and the Maryland Rule that controls filing under that statute, we "determine whether the lower court's conclusions are legally correct." *Gray v. State*, 388 Md. 366, 375 (2005) (quoting *Nesbit v. Gov't Emps. Ins. Co.*, 382 Md. 65, 72 (2004)). We interpret the Maryland Rules under the same standard. *Id.* (citing *Davis v. Slater*, 383 Md. 599, 604 (2004)).

## III.

## Discussion

A. *The Parties' Contentions*

Petitioner first urges this Court to adopt the prison mailbox rule as set forth by the Supreme Court of the United States in *Houston v. Lack*, 487 U.S. 266 (1988). The Supreme Court recognized in *Houston* that the "situation of prisoners seeking to appeal without the

6

aid of counsel is unique." *Id.* at 270. The Court held that under the Federal Rules of Appellate Procedure, an unrepresented prisoner is deemed to have filed his or her petition when the prisoner delivers it to prison authorities to be mailed to the court. *Id.* at 276. Petitioner acknowledges that *Houston* concerned the timeliness of an appeal from the dismissal of a petition for writ of habeas corpus, but he argues that the statute and rule at issue here—CP § 7-103 and Maryland Rule 1-322—are sufficiently parallel to those considered in *Houston*. Petitioner asserts that this Court should have little trouble embracing the Supreme Court's reasoning and applying it to this case. Petitioner notes that, in the wake of *Houston*, the Supreme Court amended the Federal Rules of Appellate Procedure to reflect the Court's holding, and federal and various state courts have adopted the prison mailbox rule for appeals, petitions for post-conviction relief, and petitions for federal habeas corpus relief.

Petitioner also maintains that several Maryland cases, decided both before and after *Houston*, set the stage for applying the prison mailbox rule in the post-conviction context. Petitioner challenges, in particular, the Court of Special Appeals' reading of *Molé*. As noted earlier, in *Molé*, we interpreted Rule 1-322(a) to determine that a notice of appeal, though it arrived in the clerk's post office box on time but did not physically reach the clerk until after the filing deadline, was timely filed. In Petitioner's view, the Court of Special Appeals read *Molé* too narrowly, foreclosing the possibility that an unrepresented prisoner, who is situated differently than the plaintiff in *Molé*, might have uniquely compelling circumstances that warrant a more lenient standard.

7

Next, Petitioner argues that, per the Supreme Court's reasoning in *Houston*, adopting the prison mailbox rule avoids concerns about due process and equal protection violations. Other courts, Petitioner says, have implicated these constitutional concerns in adopting the rule. Moreover, Petitioner asserts that adopting the rule improves access to the courts for unrepresented litigants who are incarcerated.

If this Court decides not to adopt the prison mailbox rule, Petitioner would have us clarify to what extent the "extraordinary cause" provision of CP § 7-103(b) applies in a situation such as Petitioner's—where an unrepresented inmate delivers to prison authorities a post-conviction petition before the ten-year time limit has expired, but the court does not receive it until the deadline has passed. Petitioner argues that the "extraordinary cause" language "naturally extends to a recognition of the extraordinary position of the *pro se* prisoner" and the adoption of "a version of the prison mailbox rule whereby the ten-year deadline for filing a petition is tolled or extended." Consequently, if the Court either adopts the prison mailbox rule or deems Petitioner's position to constitute "extraordinary cause," Petitioner asks us to hold that the circuit court erred in dismissing his petition as untimely, and the Court of Special Appeals erred in affirming the same.

Following the reasoning of the Court of Special Appeals, the State's argument begins with an analysis of the language of the post-conviction statute, CP § 7-103. The statute provides that unless extraordinary cause is shown, the filing deadline for a petition is ten years. Under Rule 1-322(a), a petition is deemed filed based on "the date noted by the clerk [of the court] on the item." As this Court recognized in *Molé*, the State observes, "[a] pleading or paper is filed by actual delivery to the clerk. . . . [T]he date of filing is the

8

date the clerk receives the pleading, not the date when the pleading was mailed." *Molé*, 381 Md. at 34 (quoting Niemeyer & Schuett, *Maryland Rules Commentary* 35). The *Molé* Court added that Rule 1-322(a) is "so clear and unambiguous in this regard that it does not require construction." *Id.* at 33 (quoting *Blundon v. Taylor*, 364 Md. 1, 11 (2001)).

It is undisputed that the clerk received Petitioner's petition one day after the ten-year limitations period expired. The State therefore asserts that, under the Maryland authorities cited above, the petition was correctly rejected by the circuit court and the Court of Special Appeals rightly affirmed.

Additionally, the State avers that Petitioner failed to claim in the circuit court that he had "extraordinary cause" for his late filing. And, as the statute mandates, where extraordinary cause is not shown, a petition "may not be filed more than 10 years after the sentence was imposed." CP § 7-103(b). The State argues that, taken together, these two undisputed facts—that the petition was "filed" one day after the ten-year deadline and that Petitioner did not argue that his circumstances were extraordinary—completely bar Petitioner's claim for relief.

The State argues next that this Court "need not, and should not, adopt and apply the prison mailbox rule to [Petitioner's] post-conviction case." In the State's estimation, *Houston* is distinguishable. First, the State reads *Houston* as deciding that the prison mailbox rule applied to unrepresented inmates who, having done all that they could reasonably do to timely file an appeal, nonetheless could not meet a strict thirty-day filing window. The State argues that this was also true in *Fallen v. United States*, 378 U.S. 139 (1964)—a case producing a concurrence upon which the *Houston* Court relied—where the

9

time to file was a mere ten days after judgment had been entered.  In addition, the *Houston* Court concluded that Federal Rule of Appellate Procedure 4(a) allowed for the possibility that "filing" could occur by delivery to prison authorities, *Houston*, 487 U.S. at 272–73.  The State argues that this possibility does not exist in Rule 1-322(a).

The State further notes that the Supreme Court in *Houston* interpreted a federal rule of procedure; it did not make a constitutional pronouncement.  Therefore, the decision is not binding on state courts.  The State points to instances in which other state courts considered adopting the rule but declined to do so, generally for fear of encroaching on legislative authority to set deadlines and an unwillingness to declare judicially what could easily be established in a rulemaking capacity.  In this case, the State argues that CP § 7-103, with its ten-year deadline and extraordinary cause provision, fully protects an unrepresented inmate's access to the courts.

The State would also have us distinguish the other cases upon which Petitioner relies.  The State asserts that in *Coates v. State*, 180 Md. 502 (1942), and *Beard v. Warden of the Maryland Penitentiary*, 211 Md. 658 (1957), both of which predated *Houston*, we concluded that a prisoner must have made every effort to timely file an appeal.  The State points out that Petitioner waited until the very end of the ten-year filing period.  Moreover, according to the State, Petitioner chose to file his petition on his own behalf even though he was entitled under CP § 7-108 to the assistance of counsel.  As we understand the State's assertion, Petitioner could have obtained the assistance of the Office of the Public Defender to ensure receipt by the clerk of the circuit court before the limitations period expired.  For

10

these two reasons, the State contends that Petitioner failed to show that he made every effort to comply with the statute's filing deadline.

As for Petitioner's constitutional arguments, the State argues that constitutional protections already exist in the statute. Ten years to file a claim with an exception for extraordinary cause, the State asserts, is more than enough to avoid any constitutional issue. The State argues that this Court should reject Petitioner's claim, as it "simply represents one self-interested litigant's attempt to obtain post-conviction review despite his own unjustified failings."

Finally, the State insists that if this Court plans to adopt the prison mailbox rule, we should do so through the established rulemaking process and not Petitioner's appeal. The State notes that the holding of *Houston* was based (at least in part) on the Supreme Court's determination that the federal prison system had "well-developed procedures for recording the date and time at which [prison authorities] receive papers for mailing." *Houston*, 487 U.S. at 275. And, the State argues, there is no evidence in the record that Maryland prisons either have appropriate procedures in place or could adopt them cost-effectively. The State claims that these types of inquiries are best handled by the Standing Committee on Rules of Practice and Procedure, which can consider these and other relevant factors in drafting a new rule.[3]

---

[3] The State directs our attention to a draft amendment to Rule 1-322 currently before the Rules Committee. The amendment would codify the prison mailbox rule and provide a form "Certificate of Filing" that prisoners could use to attest to the date on which they delivered to prison authorities their papers or pleadings.

The Court has been informed that the Rules Committee has tabled this draft amendment pending our decision in the present case.

B. *Analysis*

For the reasons explained below, we adopt the prison mailbox rule as the law in Maryland for post-conviction petitions filed by unrepresented prisoners. And because it is an "application of new interpretations of constitutional provisions, statutes or rules," the prison mailbox rule applies to "the case before us and all other pending cases where the relevant question has been preserved for appellate review." *Polakoff v. Turner*, 385 Md. 467, 488 (2005); *id.* at 485 n.11 (observing that "[i]f the litigant who successfully contests a standing rule of law is denied relief because the new rule applies purely prospectively, there would be little motivation to attack settled rules of law" (quoting *Stover v. Stover*, 60 Md. App. 470, 476 (1984))); *see also Griffith v. Kentucky*, 479 U.S. 314, 328 (1987).

1. Houston *and Its Federal and State Court Progeny*

We are guided in our decision by the reasoning of the Supreme Court in *Houston*. There, Houston, a federal prisoner unaided by counsel, filed in federal district court a petition for writ of habeas corpus. 487 U.S. at 268. His petition was dismissed. *Id.* Pursuant to the applicable rule, Houston had thirty days to file a notice of appeal. *Id.* at 269. On day twenty-seven, he delivered his notice of appeal to prison authorities. *Id.* at 268. The district court received his appeal on day thirty-one, and it was eventually dismissed as untimely. *Id.* at 269.

The Supreme Court recognized at the outset that the "situation of prisoners seeking to appeal without the aid of counsel is unique." *Id.* at 270. The Court explained:

> Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30-day deadline.

Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice.

*Id.* at 270–71. Further distinguishing prisoners proceeding without the aid of counsel from other litigants, the Court stated:

Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it. *Pro se* prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them. Worse, the *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay.

*Id.* at 271. The Court then highlighted the central problem faced by an unrepresented prisoner:

Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access—the prison authorities—and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

*Id.* at 271–72.

The Court grounded its holding in textual analysis. The habeas statute in question, 28 U.S.C. § 2107, provided:

[N]o appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice

of appeal is filed, within thirty days after the entry of such judgment, order or decree.

The Court noted that the statute "does not define when a notice of appeal has been 'filed' or designate the person with whom it must be filed." *Houston*, 487 U.S. at 272. The Court then turned to the relevant rules of procedure. Federal Rule of Appellate Procedure 3(a) provides, in relevant part:

> An appeal permitted by law as of right from a district court to a court of appeals may be taken only by filing a notice of appeal with the district clerk within the time allowed by Rule 4.

At the time of *Houston*, Federal Rule of Appellate Procedure 4(a)(1), which defines the time limits in Rule 3, provided, in pertinent part:

> In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from[.]

Given this language, the Court concluded, "nothing in the statute suggests that, in the unique circumstances of a *pro se* prisoner, it would be inappropriate to conclude that a notice of appeal is 'filed' within the meaning of § 2107 at the moment it is delivered to prison officials for forwarding to the clerk of the district court." *Houston*, 487 U.S. at 272. Nor was there a textual barrier in Rules 3 and 4 because nothing equated "receipt" by the clerk of the court with "filing." *Id.* at 274.

The *Houston* Court relied, in part, on Justice Stewart's concurrence in *Fallen v. United States*, 378 U.S. 139 (1964). That case involved the timeliness of a notice of a direct appeal that was filed by a convicted and incarcerated defendant without the assistance of counsel. Under then-effective Federal Rule of Procedure 37(a), a defendant

14

was afforded ten days to file a notice of appeal after a judgment was entered. *Id.* at 142. Two days before the deadline, Fallen wrote two letters, one asking for a new trial and the other for an appeal. *Id.* at 143. The letters, which were housed in the same envelope, were mailed and, if forwarded to the clerk's office, would "in the normal course" have been timely received. *Id.* at 141, 143. The letters were not timely received by the clerk of the court, however, owing to a delay attributable solely to prison authorities. *Id*. at 143–44.

The Supreme Court's analysis focused on the letter seeking an appeal. The majority held that Fallen "had done all that could reasonably be expected to get the letter to its destination within the required 10 days." *Id*. at 144. Under those circumstances, the Court "decline[d] to read the Rules so rigidly as to bar a determination of [the petitioner's] appeal on the merits." *Id*. In a concurring opinion, Justice Stewart, joined by Justices Clark, Harlan, and Brennan, argued that an unrepresented prisoner achieves "filing with the clerk" under Rule 37(a) when he "delivers [a notice of appeal] to the prison authorities for forwarding to the clerk of the District Court." *Id.* (Stewart, J., concurring).

In *Houston*, the Court applied the logic of the *Fallen* concurrence. The Court reasoned that strictly construing "filing" in the context of an unrepresented prisoner would not comport with the Court's understanding of the terms "filing" and "receipt." *Houston*, 487 U.S. at 273. As applied to non-incarcerated litigants, "filing" might mean the moment at which the clerk receives a pleading or the moment at which the clerk formally files, stamps, or records the pleading. *Id.* The Court explained that the earlier point in time— receipt by the clerk—is the moment of filing because "the appellant has no control over delays between the court clerk's receipt and formal filing of the notice." *Id.* By contrast,

"the lack of control of *pro se* prisoners over delays extends much further than that of the typical civil litigant." *Id.* Such a difference, the Court held, warranted a departure from the general rule in civil appeals that receipt constitutes filing. *Id.* at 273–76.

Following *Houston*, a number of our sister state courts have adopted the prison mailbox rule for unrepresented prisoners.[4] For example, in *Sykes v. State*, 757 So. 2d 997 (Miss. 2000), the Supreme Court of Mississippi considered whether a three-year statute of limitations barred a post-conviction petition that was deposited with prison authorities three days before the limitations period expired but stamped by the clerk of the court one day late. *Id.* at 998. The relevant statute provided, in pertinent part, "The motion under this article shall be filed as an original civil action in the trial court." Miss. Code Ann. § 99-39-7. The procedural rule stated, in pertinent part, "The filing of pleadings and other papers with the court as required by these rules shall be made by filing them with the clerk of the court." Miss. R. Civ. P. 5(e)(1). Under this framework, the court held that

> a pro se prisoner's motion for post-conviction relief is delivered for filing under the [post-conviction statute] and the Mississippi Rules of Civil Procedure when the prisoner delivers the papers to prison authorities for mailing. Prison authorities may initiate such procedures as are necessary to document reliably the date of such delivery, by means of a prison mail log of legal mail or other expeditious means. Henceforth, an inmate's certificate of service will not suffice as proof.

---

[4] We need not address cases from the federal courts, as they are bound by *Houston*. Moreover, in 2004, the Supreme Court, with the approval of Congress, adopted procedural rules incorporating the prison mailbox rule for cases brought under 28 U.S.C. §§ 2254 and 2255. *See* Rules Governing Section 2254 Cases in the United States District Courts, Rule 3; Rules Governing Section 2255 Cases for the United States District Courts, Rule 3; *see also* 28 U.S.C. § 2244(d)(1) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court.").

16

*Sykes*, 757 So. 2d at 1000–01. Nothing in the statute or rule of procedure—though the words "filed" and "filing" seem clear—compelled the conclusion that filing only happens at the moment of receipt or stamping by the clerk. *Id.* at 1000.

In *Holland v. State*, 621 So. 2d 373 (Ala. Crim. App. 1993), the Court of Criminal Appeals of Alabama held that a post-conviction petition placed in the mail by an unrepresented prisoner four days before the limitations period expired, even though the clerk of the court received it one day after the deadline, was timely filed. *Id.* at 374. Other out-of-state cases with similar facts in the post-conviction context have followed the holding and reasoning of *Houston*. *See, e.g.*, *State v. Rosario*, 987 P.2d 226 (Ariz. Ct. App. 1999); *Haag v. State*, 591 So. 2d 614 (Fla. 1992); *Wahl v. State*, 344 P.3d 385 (Kan. 2015).

Still other state courts have rejected the prison mailbox rule in actions for post-conviction relief and elsewhere. For the most part, those courts have articulated three main reasons militating against adopting the rule: (1) *Houston*, as an interpretation of a federal procedural rule, is not binding precedent; (2) the language in the statutes and rules in their jurisdictions would not square with the prison mailbox rule; and (3) the reliability of the prison mail system described in *Houston* is not present in their jurisdictions. Delaware and Missouri offer two examples of states in which supreme courts have rejected the prison mailbox rule for these reasons.

The Supreme Court of Delaware held that Delaware procedural rules precluded the adoption of the prison mailbox rule, stating that "a notice of appeal filing deadline is not subject to enlargement in Delaware." *Carr v. State*, 554 A.2d 778, 779–80 (Del. 1989). Further, the court found "the procedure used to mail letters in the Delaware prison system"

17

to be "very different from that employed in the federal penal system." *Id.* at 780. The court reasoned that if the prison mailbox rule were to be adopted, "no one would have any record of when a piece of mail was posted" because inmates anonymously place their mail into a prison mailbox with no recording procedures. *Id.* In *O'Rourke v. State*, 782 S.W.2d 808 (Mo. Ct. App. 1990), an intermediate appellate court in Missouri, citing *Carr*, came to the same conclusion for similar reasons. The court rejected the prison mailbox rule partly because the relevant procedural rule clearly "specifie[d] that a motion for post-conviction relief is to be filed with the clerk of the trial court." *Id.* at 809. The court also noted "a lack of institutional safeguards," *id.*, such as federal prison authorities' "well-developed procedures for recording the date and time" that inmate mail is received, *Houston*, 487 U.S. at 275.

2. *Maryland Authority*

This Court last addressed the issue of timely filings in *Molé*. In that case, a plaintiff suing for negligence and battery prevailed in the trial court with respect to her negligence claim, but she took issue with the trial court's refusal to instruct the jury on battery. 381 Md. at 29. As permitted by the clerk of the court, she sent a notice of appeal to the clerk's post office box. *Id.* at 36–37. The notice of appeal was received at the post office box on the last day of the filing deadline, but the clerk did not physically receive or date-stamp it until three days later. *Id.* at 37. Interpreting Rule 1-322(a), we held that the notice of appeal was timely filed when it was delivered to the post office box. *Id.* at 33, 38. We so held because "[a] person aware of the filing deadline, who acts reasonably to file pleadings

18

timely, should not be at the mercy of the procedure set up by the Clerk's Office for its convenience." *Id.* at 38.

In *In re Vy N.*, 131 Md. App. 479 (2000), the Court of Special Appeals decided a similar issue. There, the District Court dismissed as untimely petitions that were physically delivered to the clerk's office around 4:30 p.m. on the last day for filing but were not stamped by the clerk until the next day. *Id.* at 481. The intermediate appellate court held that because an authorized person received the petitions within the filing window, it did not matter that the petitioners were not officially stamped. *Id.* at 486 ("[The petitions] were actually delivered to a person authorized to receive them on January 11th, [so] they were *filed* on—and should have been 'stamped in' as of that date.").

In *Coates*, an unrepresented prisoner incorrectly addressed a letter constituting an appeal to the Chief Judge of the Court of Appeals. 180 Md. at 504. Because of this error, and because the warden to whom the prisoner entrusted the letter delayed in sending it, the letter was not timely filed. *Id.* We held that "[t]he prisoner did all that his ignorance and lack of advice permitted in forwarding his appeal in time, and the nature of his objection requires that it be accepted as of that time." *Id.* This was because "he gave the letter to the warden of the penitentiary, as disciplinary rules require, for mailing, within the time fixed by the rule of court for appeals," *id.*, a situation not unlike the one in the instant case.[5]

---

[5] A careful reading of *Coates* reveals that the decision to allow the petition to proceed was centered on the unfairness attendant to the defendant's having been deprived of his constitutional due process right to counsel throughout the proceedings, beginning with the arraignment. *Coates*, 180 Md. at 503–04. Indeed, this Court interpreted *Coates* just a few years later, noting that "[u]nder the special circumstances" present in *Coates*,

19

Likewise, in *Beard*, a prisoner attempted to file a petition for writ of habeas corpus within ten days of sentencing. 211 Md. at 660. Due to a presumptive delay on the part of prison authorities, his petition arrived late. *Id.* at 660–61. We remanded the case for the trial court to determine whether he should be granted a "delayed appeal," depending on whether it was prison authorities or the prisoner himself who was to blame. *Id.* at 661 (citing *Coates*, 180 Md. at 504).[6]

3. *The Prison Mailbox Rule in Maryland*

We adopt the prison mailbox rule in Maryland for unrepresented prisoners attempting to file post-conviction petitions. From now on, an unrepresented prisoner is deemed to have filed his or her post-conviction petition at the moment the prisoner formally delivers it to prison authorities for forwarding to the circuit court.[7] This result not only is reasonably grounded in the language of CP § 7-103(b) and Maryland Rule 1-322(a), it also is equitable in light of the unique circumstances faced by prisoners unaided by counsel. None of the holdings of the Maryland cases cited above are disturbed by this pronouncement, nor do they preclude it.

---

permitting his petition to proceed was a "corrective procedure." *Bernard v. Warden of Md. House of Correction*, 187 Md. 273, 282 (1947).

[6] Although not altogether clear, it appears that, on remand, the circuit court held a hearing and made findings that led to Beard's receiving a delayed appeal. *Beard v. State*, 216 Md. 302, 305, 307 (1958).

[7] Petitioner did not allege in the circuit court "extraordinary cause" as the phrase is employed in CP § 7-103(b). Even so, that is of no moment given our holding.

20

*Coates* does not stand in the way of our adoption of the prison mailbox rule. Indeed, as noted above, the reasoning of that decision is wholly in line with the rationale undergirding our adoption of the rule. And, though neither *Molé* nor *In re Vy N.* dealt with unrepresented prisoners attempting to file post-conviction petitions, the teachings of those cases apply to the case at bar. Both *Molé* and *In re Vy N.* involved relinquishing authority over documents to a government agent, and in neither case did the litigants have control over what happened next. A prisoner acting without the assistance of counsel has even less control over his or her filings than did the parties in those two cases. Maryland Rule 1-322(a) provides, "The filing of pleadings, papers, and other items with the court shall be made by filing them with the clerk of the court." Yet, in *Molé*, we determined that a notice of appeal could be delivered to the clerk's post office box rather than to the clerk's physical address at the courthouse—i.e., that a pleading could be deemed filed when received at a place other than the clerk's office. In *In re Vy N.*, the Court of Special Appeals held—and we have not overturned—that, so long as an authorized person received a pleading on the day it was due, even if the clerk did not stamp it, the pleading would be deemed filed. In adopting the prison mailbox rule, we apply together the principles established in *Molé* and *In re Vy N.* to decide that an unrepresented prisoner, under CP § 7-103(b), "files" his or her post-conviction petition when the prisoner delivers it, properly addressed, to prison authorities for mailing to the circuit court.

It is true that, in *Molé*, we also stated that "the date of filing is the date the *clerk* receives the pleading, not the date when the pleading was mailed." 381 Md. at 34 (emphasis added) (quoting Niemeyer & Schuett, *Maryland Rules Commentary* 35). But

21

*Molé* and, for that matter, *In re Vy N.,* were decided in different contexts—neither involved the "unique" position of unrepresented inmates who must surrender all outgoing mail to prison authorities for forwarding. *Houston*, 487 U.S. at 270–71. The circumstances of an unrepresented inmate are undeniably different from those of a non-incarcerated litigant—represented or unrepresented—who can physically assure the delivery of papers or pleadings on a particular day, call and check in with the clerk's office regarding the receipt of any mailed documents, and make emergency provisions if necessary.

At bottom, CP § 7-103(b) and Rule 1-322(a) are sufficiently symmetrical to 28 U.S.C. § 2107 and Federal Rules of Appellate Procedure 3 and 4 at issue in *Houston*. Both the federal statute and CP § 7-103 provide a timeframe for filing, and both the federal rules and Rule 1-322 make clear that filings must be directed to the clerk of the court.[8] Just as in *Houston*, CP § 7-103(b) does not say that "filed" means received and stamped by the clerk's office. The Supreme Court made the point in *Houston* that ordinary litigants have control over the method and timing of their filings; unrepresented inmates do not. They can only deliver their pleadings and papers to the prison mailroom and hope for the best. "Filing," for them, means something altogether different than for the ordinary litigant. Moreover, our decision in *Molé* does not foreclose the possibility that the "filing" requirement might apply differently to different classes of persons. Simply stated, application of Rule 1-322 in that case did not involve the unique circumstances present here.

---

[8] *Sykes*, which adopted the prison mailbox rule in Mississippi, interpreted a similar framework. 757 So. 2d 997.

22

The cases from our sister state courts upon which the State relies, including *Carr* and *O'Rourke*, do not persuade us to reach a contrary conclusion. The courts in those cases engaged in rigid analyses based solely on the text of applicable rules and statutes in their jurisdictions. Both courts specifically noted that, because *Houston* interpreted a federal statute and rule of procedure, they were not bound by the Supreme Court's holding. And, in our view, both courts focused on the impracticability of implementing the prison mailbox rule without fairly weighing the interests of the prisoners whom the rule was designed to protect.

Like we do today, the Supreme Court of Georgia adopted, by way of a judicial opinion, the prison mailbox rule in cases involving appeals from habeas corpus petitions. *See Massaline v. Williams*, 554 S.E.2d 720 (Ga. 2001). In doing so, the court implemented a creative yet pragmatic solution that addresses the concerns about reliability cited in *Carr* and *O'Rourke* and raised by the State here:

> We recognize that the mechanics for administering this Court's adoption of a mailbox rule may require some refinements after it is put in practice. Whether the unrepresented inmate-litigant delivered his court papers to the prison officials on or before the court deadline will be the question. Absent an established system for logging the date an inmate's outgoing legal mail is delivered to prison officials, a pro se prisoner may prove the timeliness of his filing in, at least, the following ways:
>
> > (a) an official United States Postal Service post-mark showing a date before the deadline will be conclusive;
> >
> > (b) the date on the certificate of service will give rise to a rebuttable presumption that the prisoner handed his filing to the prison officials on that date; or

23

> (c) an affidavit reflecting the date and the fact the prisoner provided his legal filing with sufficient prepaid postage for first-class mail will give rise to a rebuttable presumption.
>
> The State may rebut the presumption that arises when a litigant relies on methods (b) or (c) by proving that, contrary to the representation in the certificate of service or affidavit, the prisoner delivered his application or notice of appeal to the prison officials after the deadline for filing.

*Id.* at 723. Although we leave such particulars to our rulemaking process, these measures offered by the Supreme Court of Georgia suggest, at the least, a possible framework for assisting courts in determining with accuracy the date on which a *pro se* petition may fairly be deemed to have been deposited with prison authorities.

We decline to adopt what the State has characterized as the "'did all he could do' legal standard" from the majority opinion in *Fallen* and our decisions in *Beard* and *Coates*. None of those cases set a legal standard for an unrepresented prisoner's conduct that focuses on his or her efforts to timely file; rather, those cases recognize the point at which— given the unique circumstances an unrepresented prisoner faces—those efforts no longer matter. As the Supreme Court explained, "[o]ther litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation." *Houston*, 487 U.S. at 271. If we were to adopt the State's position, courts would be required to determine what constituted the sum total of reasonable efforts by an unrepresented prisoner. However, it could almost always be argued that an inmate proceeding without counsel could have, and should have, delivered mail to the prison mailroom earlier than he or she did. *Id.* ("No

24

matter how far in advance the *pro se* prisoner delivers his notice to the prison authorities, he can never be *sure* that it will ultimately get stamped 'filed' on time.").

Further, it would be unreasonable—and unfair—to have a statutorily-fixed filing window and then mandate that a prisoner, advocating on his or her own behalf, could not use all of that available window to craft a request for relief. *See In re Jordan*, 840 P.2d 983, 991 (Cal. 1992) ("[T]he conclusion . . . that the prison-delivery rule has lost its vitality because that rule was adopted when the filing period comprised only 10 days, overlooks the critical point that the rule rests in large measure on the proposition that prisoners and nonprisoners are entitled to have available an equal period of time in which to pursue their appellate rights.").[9]

Nor do we accept the State's argument that Petitioner could have—or should have—obtained the assistance of the Public Defender's Office to ensure receipt of his petition by the Clerk of the Circuit Court for Baltimore City. The record does not establish, one way or the other, whether Petitioner elected to proceed without attempting to secure counsel or whether the Public Defender's Office would have assisted him in filing the petition.[10]

---

[9] In fact, this Court, acting upon the recommendation of the Rules Committee, has addressed in the electronic filing context the unfairness that might inhere in a lack of control. In the event of a system outage on the day of a filing deadline, Rule 20-501 grants electronic filers a one-day extension to file or, alternatively, provides that paper submissions will be accepted. By promulgating that Rule, we recognized that that there may be circumstances that call for some measure of flexibility—even for those litigants who have the luxury of filing one minute before the filing window expires. Given the proliferation of electronic filing, we note that unrepresented prisoners currently have even less access to the courts than non-incarcerated individuals.

[10] According to the Maryland Office of the Public Defender, Post Conviction Defenders Division, prisoners are informed that they "may file a post conviction petition

Regardless, Petitioner should not be penalized for failing to request assistance from the Public Defender.

Finally, the State suggests that, rather than judicially adopt the prison mailbox rule in this opinion, we should have the Rules Committee take the initiative. We decline the suggestion.[11] As in *Houston*, justice and a fair resolution of this issue demand that we judicially adopt the prison mailbox rule for Petitioner's sake. Petitioner is entitled to the benefit of the rule he advances; so too should any other similarly situated prisoner whose case is pending receive the benefit of the rule we adopt here.

We are confident that Maryland prison authorities are capable of creating or continuing documentation procedures for outgoing legal mail sent by prisoners. These procedures ensure that unrepresented litigants have a fair chance at accessing our courts and seeking justice within the timeframes spelled out by applicable rules and statutes.

---

on [their] own, *or apply* to Post Conviction Defenders Division to have an attorney file a petition for [them]." *Post Conviction Defenders Division, Frequently Asked Questions*, Maryland Office of the Public Defender (emphasis added) (last visited Apr. 23, 2018), https://perma.cc/9ZLC-GPFQ. If a prisoner files a petition without the assistance of the Public Defender, and "[i]f the petition alleges that the petitioner is indigent, the clerk shall promptly notify the [Post Conviction Defenders Division] by forwarding a copy of the petition." Md. Rule 4-403.

[11] We do not mean to suggest that the Rules Committee does not have an important role in codifying the prison mailbox rule and defining its parameters. We have no doubt that the Committee's work will produce proposed rules designed to clarify and refine implementation of the rule we announce today. Indeed, we encourage the Committee to determine the scope of the prison mailbox rule and explore whether, for example, the rule also should apply to prisoner-filed notices of appeal and petitions for writ of certiorari.

## IV.

### Conclusion

For the reasons stated above, we hereby adopt the prison mailbox rule. A post-conviction petition by an unrepresented prisoner is deemed to be "filed" at the moment the petition is formally submitted to prison authorities for forwarding to the circuit court. Accordingly, as applied to Petitioner, an unrepresented and incarcerated litigant, his petition for post-conviction relief was timely filed when he delivered it to prison authorities at least two days before the limitations period expired. Because the petition was timely filed, Petitioner's action for post-conviction relief may proceed.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE ORDER OF THE CIRCUIT COURT FOR BALTIMORE CITY DISMISSING THE PETITION AND REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**

27